# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY. AND THE PREROGATIVE COURT.

MARCH TERM, 1903.

WILLIAM N. COLER, JR., appellant,

*v.*

THE TACOMA RAILWAY AND POWER COMPANY et al., respondents.

[Filed March 2d, 1903.]

An arrangement having been made between the Tacoma Railway and Power Company, a corporation of this state, and the Seattle-Tacoma Interurban Railway, a corporation of the State of Washington, by which the New Jersey company should transfer all its property and franchises, except the franchise of being a corporation, to the Washington company, and the latter should issue therefor to the New Jersey company twenty thousand shares of fully-paid stock of the par value of $100 per

share, or, in case any stockholder in the New Jersey company refused to accept such stock in exchange for his own stock share for share, then the Washington company should pay $35 cash in lieu of each share so refused—*Held*, on bill filed by a stockholder in the New Jersey company, that the consummation of the arrangement ought to be restrained, because—(1) it was tantamount to a dissolution of the New Jersey corporation, within the meaning of our statute, and therefore could be legally carried out only by such proceedings as our statute prescribed for dissolution; (2) under the constitution and judicial decisions in Washington, it is unlawful to issue corporate stock as fully paid, for less than its par value, and the above arrangement shows on its face a purpose to issue such stock for thirty-five per cent. of its par value; (3) under the constitution and judicial decisions in Washington, it is unlawful for any corporation to hold stock and exercise the usual rights of stockholders in a corporation of that state.

On appeal from an order advised by Vice-Chancellor Emery, whose opinion is reported in *19 Dick. Ch. Rep. 117*.

*Mr. Chandler W. Riker,* for the appellant.

*Mr. Richard V. Lindabury,* for the respondents.

The opinion of the court was delivered by

Dixon, J.

The Tacoma Railway and Power Company is a corporation organized under the laws of this state, having a capital stock of twenty thousand shares, of the par value of $100 each, and owning and operating a street railway in the city of Tacoma, in the State of Washington. The Seattle–Tacoma Interurban Railway is a corporation organized under the laws of the State of Washington. The present bill is filed by a stockholder of the New Jersey company against that company, its officers and directors, to prevent the consummation of an arrangement by which the company is to transfer all its property and franchises, except the franchise of being a corporation, to the Washington company, and is to receive therefor twenty thousand shares of stock in the latter company, of the par value of $100 each, besides certain assumptions and guaranties; but if any stockholder of the New Jersey company should be unwilling

Coler *v.* Tacoma Ry. & Power Co.

to exchange his shares of stock for an equal number of shares of stock in the Washington company, then the latter company is to pay the New Jersey company $35 in cash for each share held by the unwilling stockholder, in lieu of an equal number of shares in the Washington company. The twenty thousand shares of stock which the Washington company agrees to give will be created by an increase of its capital stock to that extent.

The power of the New Jersey company to carry out this scheme is based by the defendants on the seventh paragraph of its certificate of incorporation, in these words:

"With the assent in writing and pursuant to a vote of the holders of a majority of the stock issued and outstanding, and not otherwise, the stockholders having been formally convened in meeting, the directors shall have power and authority to sell, assign, transfer, mortgage or otherwise dispose of the whole property of this corporation."

This clause does not confer the necessary power. It authorizes the transfer of property only, while the arrangement in question requires the transfer, not merely of all the property, but also of all the franchises of the company, except the franchise of being a corporation. A corporation which has sold only its property, receiving therefor a valuable consideration, is still able to engage in new enterprises within the scope of its charter; but one which has parted with all its franchises except that of existence, is, for all purposes, outside of the winding up of its affairs, defunct. It is in the exact condition contemplated by our statute as that of a dissolved corporation, for the fifty-third section of our Corporation act (*P. L. of 1896 p. 277*) provides that

"all corporations, whether they expire by their own limitation or be annulled by the legislature or otherwise dissolved, shall be continued bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them to settle and close their affairs, to dispose of and convey their property, and to divide their capital, but not for the purpose of continuing the business for which they were established."

That such dissolution was regarded as the practical effect of the present arrangement, and so intended by the directors and

stockholders who favored it, is made evident by the fact that, at the same meetings at which the arrangement was approved, they voted for a formal dissolution of the company under the statute.    The mode in which a New Jersey corporation can voluntarily effect its own dissolution is prescribed by section 31 of our act, and, of course, no other mode can legally be adopted.    It is conceded that this mode was not pursued, and it seems, necessarily, to follow that the plan which involves dissolution is not yet capable of lawful consummation.

But if the proposed transfer be not considered as a dissolution within the intent of the statute, still there is reason why it should be enjoined.

According to the decisions of the courts of Washington, it is unlawful to issue corporate stock as fully paid up unless the corporation receives therefor money, or money's worth, to the face value of the stock, and, when such stock is issued for property, the judgment of the corporate directors respecting the value of the property is not conclusive against innocent creditors, in whose favor shares so issued will be assessable until the face value is paid in.  *Adamant Manufacturing Co.* v. *Wallace, 48 Pac. Rep. 415; Manhattan Trust Co.* v. *Seattle Coal and Iron Co., 53 Pac. Rep. 951.*    Besides these decisions, the state constitution (article 12, paragraph 6) declares that "all fictitious increase of [corporate] stock or indebtedness shall be void."    This phrase, "fictitious increase of stock," must, I think, include an issue of new stock when both the corporation and the recipient of the stock know that it is being issued for less than its face value.

Such knowledge is shown in the present case by the very terms of the proposal—for the Washington company offers a share of its stock, having a face value of $100, or in lieu thereof $35 in cash, as the unit of the price at which it will buy the property and franchises of the New Jersey company, thereby indicating, beyond dispute, that in this transaction the share and the cash are deemed of equal value.    To the extent of sixty-five per cent. of the issue, the increase of capital stock will be therefore "fictitious," and, according to the constitution,

"void." Such a scheme ought not to be forced upon an unwilling stockholder of the New Jersey company. He is entitled to require that his company shall not be stripped of its property and franchises for a counterfeit which is offered and about to be accepted as genuine.

In yet another aspect this arrangement should be disapproved.

The courts of Washington have decided that one corporation cannot subscribe for, purchase, hold or vote upon the shares of stock of another corporation without legislative sanction, and that the legislature of the state has never sanctioned such acts. *Denny Hotel Co.* v. *Schram*, 6 *Wash. 134; Parsons* v. *Tacoma Smelting and Refining Co.,* 65 *Pac. Rep. 765.* This doctrine rests altogether on considerations of public policy. But it is said that the policy, as declared, extends only to domestic corporations, and whether it should embrace foreign corporations is a matter to be decided by the courts of that state alone. I do not understand that the policy is so restricted. One of its objects is to prevent one corporation from interfering with the control of another. This was the purpose to be subserved by the decision in *Parsons* v. *Tacoma Smelting and Refining Co.,* just cited, where, although the title of the stockholding company was not assailed, its right to vote upon the stock was denied. It is true that the stockholding company was a domestic corporation, but the denial of its right to vote could not be based on that circumstance. The doctrine that it was impolitic to allow a corporation, whose chartered powers were subject to modification at the will of the state, to exercise control over a domestic corporation, would seem, necessarily, to imply that it was deemed equally impolitic to permit such control by a corporation whose chartered powers were generally independent of the state. The application of the restriction to a foreign corporation is a mere interpretation, not an extension, of the doctrine.

But if it be an extension, the extension is made by the constitution of Washington, which provides (article 12, paragraph 7) that

"no corporation organized outside the limits of this state shall be allowed to transact business within the state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state."

The decisions already cited are clearly to this effect—that if a Washington corporation owned property immovably fixed in that state, it could not lawfully bargain to exchange that property for stock in another Washington corporation, and, after completion of the exchange, exercise in the other corporation all the rights and privileges of a private stockholder. If this New Jersey corporation can legally do what is thus prohibited to a Washington corporation, then the foreign corporation is allowed to transact business in Washington on conditions more favorable than those prescribed for its domestic corporations. The constitution forbids this.

On these grounds, we think that the carrying out of the arrangement should be enjoined.

Let the order of November 22d, 1902, discharging the order to show cause, be reversed, and a preliminary injunction be issued in accordance with the order of this court made on December 3d, 1902.

*For reversal*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, FORT, GARRETSON, HENDRICKSON, PITNEY, BOGERT, VREDEN-BURGH, VOORHEES, VROOM. 11.

*For affirmance*—None.