[No. 22698. Department Two. April 6, 1931.]

BANKERS HOLDING CORPORATION, *Appellant,* v. CHARLES R. MAYBURY, *as Director of Licenses, et al., Respondents.*[1]

*L. B. Donley,* for appellant.

*The Attorney General* and *Lester T. Parker, Assistant,* for respondents.

BEELER, J.—The plaintiff brought this action to enjoin the defendants in their official capacity from proceeding to enforce the collection of a penalty prescribed by Rem. Comp. Stat., § 3855, which a foreign corporation *doing business* in this state incurs if it neglects to file a certified copy of its charter or articles of incorporation, or fails to appoint a resident agent on whom legal process may be served as required by Rem. Comp. Stat., §§ 3853, 3854. A demurrer was interposed to the complaint, and was by the court sus-

[1]Reported in 297 Pac. 740.

tained. Plaintiff refusing to plead further, a judgment of dismissal was entered, from which the plaintiff has appealed.

The substantive allegations of the complaint are: The plaintiff is a foreign corporation organized under the laws of the state of Nevada; that it owns no property in the state of Washington, except that it is the owner of more than fifty-one per cent of the capital stock of two state banks and two national banks domiciled within the state of Washington; that it maintains no office or place of business within this state, and has filed no certified copy of its articles of incorporation with the secretary of state, nor has it paid the fees required by law to be paid by foreign corporations undertaking to do business within this state. The complaint further alleges:

"That one of the objects for which the said plaintiff. is formed is the purchase, ownership, holding and voting of the capital stock of banking and other corporations, and thereby controlling the same by the purchase, ownership and voting of the majority of the stock thereof, and to do any and all things for the protection, improvement and enhancement of the value of such securities or any thereof; that the plaintiff, Bankers Holding Corporation, intends in the immediate future and from time to time in the future to purchase and acquire within the state of Washington the controlling interest in various banking institutions by the purchase of a majority of the stock of such various banking institutions."

The precise question raised by this appeal has not heretofore been presented to this court. The single question is whether a foreign corporation organized for the purpose or object of purchasing, owning, holding, and voting a majority of the capital stock of banking corporations, so as to control them, is *doing business* within this state, when it acquires by purchase a

majority of the stock of banking corporations domiciled and doing business in this state. If a foreign corporation, under these circumstances or conditions, is *doing business* in this state, then the demurrer should be sustained, otherwise not.

Prior to 1905, a domestic corporation could not lawfully subscribe for, or deal in, the stock of another domestic corporation. *Denny Hotel Co. v. Schram,* 6 Wash. 134, 32 Pac. 1002, 36 Am. St. 130; *Parsons v. Tacoma Smelting & Refining Co.,* 25 Wash. 492, 65 Pac. 765. This same rule applied to foreign corporations as well. In *Coler v. Tacoma R. & Power Co.,* 65 N. J. Eq. 347, 54 Atl. 413, a New Jersey corporation operated the Tacoma street railway system, and it was proposed to transfer to the Seattle-Tacoma Interurban Railway, a Washington corporation, all of the assets of the New Jersey corporation. The supreme court of New Jersey held that this could not be done, stating:

"The courts of Washington have decided that one corporation cannot subscribe for, purchase, hold or vote upon the shares of stock of another corporation without legislative sanction, and that the legislature of the state has never sanctioned such acts. *Denny Hotel Co. v. Schram,* 6 Wash. 134, 32 Pac. 1002, 36 Am. St. Rep. 130; *Parsons v. Tacoma Smelting & Refining Co.* (Wash.) 65 Pac. 765. This doctrine rests altogether on considerations of public policy. But it is said that the policy as declared extends only to domestic corporations, and whether it should embrace foreign corporations is a matter to be decided by the courts of that state alone. I do not understand that the policy is so restricted. One of its objects is to prevent one corporation from interfering with the control of another. This was the purpose to be subserved by the decision in *Parsons v. Tacoma S. & R. Co.,* just cited, where, although the title of the stockholding company was not assailed, its right to vote upon the stock was denied. It is true that the stockholding company

was a domestic corporation, but the denial of its right to vote could not be based on that circumstance. The doctrine that it was impolitic to allow a corporation whose chartered powers were subject to modification at the will of the state, to exercise control over a domestic corporation, would seem, necessarily, to imply that it was deemed equally impolitic to permit such control by a corporation whose chartered powers were generally independent of the state. The application of the restriction to a foreign corporation is a mere interpretation, not an extension, of the doctrine. But if it be an extension, the extension is made by the constitution of Washington, which provides (article 12, § 7) that 'No corporation organized outside the limits of this state shall be allowed to transact business within the state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state.' ''

Thus it was determined by this court, which ruling was followed by the supreme court of New Jersey, that neither a foreign nor a domestic corporation could acquire, own, hold, or vote the corporate stock of another domestic corporation. Following these decisions, the legislature of this state in 1905 enacted a statute granting to both foreign and domestic corporations the power and right to deal in the corporate stocks of domestic corporations. The statute provides:

''That any corporation heretofore or hereafter organized under the laws of this state or of any other state or territory of the United States and doing business in this state shall have power and authority to subscribe for, acquire by purchase or otherwise and to own, hold, sell, assign and transfer shares of the capital stock of any other corporation and by its duly authorized officer or proxy to vote such shares at any and all stockholders' meetings of the corporation whose shares are so held, and to have and exercise all the rights, powers, and privileges of any other stockholder, except that such corporate owner cannot be a member of the board of trustees. All existing hold-

ings by any such corporation in the shares of the capital stock of any other corporation are hereby validated." Rem. Comp. Stat., § 3810.

This statute is unambiguous and obviates construction. It is permissive in its terms. It permits a foreign corporation to do that which prior to 1905 it could not do, namely, acquire, own, hold, vote, etc., the corporate stock of a domestic corporation, provided, however, that such foreign corporation be engaged in "doing business" in this state. In other words, the legislature granted to domestic and foreign corporations, alike, the right to acquire stock in domestic corporations, provided foreign corporations were "doing business" within this state. Therefore, it follows that, if a foreign corporation is not doing business in this state, it cannot acquire, own, hold, etc., the corporate stock of domestic corporations.

Plaintiff, however, contends that, since it merely owns and holds stock in domestic corporations, it is not "doing business" within this state. We cannot so construe the complaint.

What were the purposes and objects for which the plaintiff was organized and created? Was it for gain and profit, and to be in the actual control of other banking institutions, or was it organized to remain passive and inactive? Clearly the former. And how did it propose to accomplish its purpose? By acquiring a majority of the capital stock in various financial institutions in this as well as other states, and thereby control them. That was the paramount reason for bringing it into being. In harmony with this purpose, it invaded this state and acquired the majority corporate stock in four banking institutions, and thereby was carrying out and doing in this state precisely what it was organized to do.

Furthermore, by securing a majority of the corporate stock of other financial institutions it can control and dominate them and dictate their policy; it can dictate who its officers shall be, and what salaries they shall receive; its stockholders can select the board of directors; it can determine the nature of the securities the several banks whose majority stock it has acquired shall deal in; in short, it may acquire a majority of the corporate stock of any number of banking institutions, thereby establishing a chain of banks throughout the state under one general management. Surely, under such circumstances it cannot be said that plaintiff is not "doing business" within this state.

We do not hold that isolated transactions, whether commercial or otherwise, performed in this state by a foreign corporation, constitute doing business within this state. But we do hold that, where a foreign corporation is formed for a particular purpose, to wit: acquiring, owning, and voting a majority of the corporate stock of other banking institutions, and comes into this state and carries out the very purposes and objects for which it was created, it is "doing business" within this state.

Appellant cites *Peterson v. C. R. I. & P. R. R. Co.*, 205 U. S. 364, 51 L. Ed. 841; *Groel v. United Electric Co. of New Jersey*, 69 N. J. Eq. 397, 60 Atl. 822; 9 Fletcher Cyc. Corp. 10024; 14-A C. J., p. 1291. The citation from Corpus Juris provides:

"It has generally been held that a foreign corporation is not 'doing' or 'transacting business' within the meaning of the statutes under consideration by reason of the fact that it owns and holds stock of domestic corporation engaged in 'doing' or 'transacting business' therein. This is true, although the amount owned and held constitutes the controlling interest. It has also been held that a purchase by a foreign corporation of stock in a domestic corporation doing busi-

ness within the state of its domicile does not constitute 'doing' or 'transacting business' within the meaning of such restrictive statutes. Nor do such statutes prevent foreign corporations from exercising all the incidents of stock ownership, including the right to vote such stock at corporate meetings held within the state, and to assent at such meetings to a change in the corporate regulations. While it is generally held that the mere fact that a foreign corporation owns stock in a domestic corporation does not in itself constitute doing business in a state, it has been held that the acquisition and holding by a foreign corporation of stock in a domestic corporation *does constitute doing business within the domestic state where such transactions form one of the direct objects of the existence of the foreign corporation."* (Italics ours.)

So here, the very object and purpose for the existence of the plaintiff corporation being to deal in, acquire, and hold the corporate stocks of other banking institutions, when it acquired a majority of the corporate stock of four banks in this state it was carrying out the very purpose for which it was created, and hence the latter portion of the text is applicable and controlling.

Respondent relies on the following authorities:

*Commonwealth v. Wilkes-Barre & H. R. Co.,* 251 Pa. St. 6, 95 Atl. 915; *Colonial Trust Co. v. Montello Brick Works,* 172 Fed. 310; *Central Life Securities Co. v. Smith,* 236 Fed. 170; *Green v. Kentenia Corporation,* 175 Ky. 661, 194 S. W. 820; *Weiser Land Co. v. Bohrer,* 78 Ore. 202, 152 Pac. 869; *Conhaim Holding Co. v. Willcuts,* 21 Fed. (2d) 91; *Lane Timber Co. v. Hynson,* 299 Fed. 619; *People ex rel. Wall & H. St. Realty Co. v. Miller,* 181 N. Y. 328, 73 N. E. 1102; *Pacific Typesetting Co. v. International Typographical Union,* 125 Wash. 273, 216 Pac. 358, 32 A. L. R. 767.

A well considered case, and one where both the facts and the question involved were quite similar to the

facts in the case now before us, is that of *Commonwealth v. Wilkes-Barre & H. R. Co., supra.* There the state of Pennsylvania undertook to collect a tax from the defendant, a New Jersey corporation, with general powers to do various acts, including that of holding bonds, mortgages, stocks, securities, and other evidences of indebtedness of public and private corporations. The New Jersey corporation owned practically all of the capital stock and bonds of three railway corporations organized under the laws of Pennsylvania and doing business in that state. It appears that no business was done by the defendant corporation in New Jersey, nor was any of its property located in that state. The New Jersey corporation was primarily a holding company.

"The corporation transacts no other business except as a holder and owner of the stock and bonds of the companies heretofore mentioned, and is, in effect, merely a holding company of Pennsylvania corporations engaged in business in this state. The company has never registered in Pennsylvania.

"The question for determination is whether defendant is subject to the tax provided by the act of June 30, 1885 (P. L. 193; 4 Purd. 4544, pl. 28), which requires the treasurer of private corporations 'incorporated by or under the laws of the commonwealth, or the laws of any other state, or of the United States, and doing business in this commonwealth, upon payment of any interest on any scrip, bond, or certificate of indebtedness issued by said corporation to residents of this commonwealth,' to assess the tax of four mills on the dollar imposed by the act of June 8, 1891 (P. L. 229, 4 Purd. 4532, pl. 1), on all corporate indebtedness owned or held in this state. In determining this question it is necessary to consider whether defendant is doing business in Pennsylvania, within the meaning of that term. The court below held the company was not doing business here, and the treasurer therefore was not subject to the provisions of the act of 1885. Defendant's only business is to hold the cap-

ital stock and securities of three Pennsylvania corporations. It maintains its statutory office in New Jersey but its treasurer resides in Pennsylvania. Its directors' meetings are held here, it keeps a bank account here, receives dividends on securities held by it, and transmits from here to a trust company in New York City money to pay on its corporate securities. . . . it does appear that defendant is engaged in the exercise of one of the purposes for which it was incorporated, namely, buying and holding the stock and bonds of certain Pennsylvania corporations *and is thus, in effect, operating these companies as one of its objects* of incorporation. . . . It does not appear the acts which were done in this state were a mere incident of defendant's corporate existence, *but were the performance of the function and business of* the corporation itself."

The word "business" is variously defined. Funk & Wagnalls' New Standard Dictionary defines "business" as

"A pursuit or occupation that employs or requires energy, time and thought; . . . Any occupation connected with the operation or details of trade or industry; . . . as, the banking business."

In the case of *Flint v. Stone Tracy Co.*, 220 U. S. 107, 31 S. Ct. 342, 357, 55 L. Ed. 389, Ann. Cas. 1912B 1312, the court said:

" 'Business' is a very comprehensive term, and embraces everything about which a person can be employed. Black's Law Dictionary, 158, citing *People ex rel. Hoyt v. Tax Commissioners*, 23 N. Y. 242, 244. 'That which occupies the time, attention, and labor of men for the purpose of a livelihood or profit.' Bouvier's Law Dictionary, vol. 1, p. 273."

Inasmuch as a corporation has no implied power to purchase and hold the stock of another corporation, and inasmuch as the act of 1905 conferred the right on foreign corporations to acquire and deal in the corporate stock of domestic corporations doing business

in this state, and inasmuch as the plaintiff, in acquiring a majority of the corporate stock of the four banks domiciled and doing business in this state, was carrying out one of the specific objects and purposes for which it was created, it follows that plaintiff is *doing business* within this state, and that the demurrer was properly sustained.

Judgment affirmed.

TOLMAN, C. J., MILLARD, FULLERTON, and BEALS, JJ., concur.