Milton S. **HANDLOS**, Plaintiff,

v.

**LITTON INDUSTRIES, INC.**, a foreign corporation, Defendant.

No. 68-C-267.

United States District Court
E. D. Wisconsin.

Sept. 24, 1969.

Kersten & McKinnon, Milwaukee, Wis., for plaintiff.

Wickham, Borgelt, Skogstad & Powell, Milwaukee, Wis., for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This case is before the court for decision on three motions by the defendant, Litton Industries, Inc. There is a motion to dismiss for lack of personal jurisdiction and a motion to dismiss for lack of venue; in the alternative, the defendant has moved for a change of venue.

The action is for personal injuries. The plaintiff alleges that as a seaman in the U. S. Navy, he was injured aboard a ship built by the Ingalls Shipbuilding Division of Litton Systems, Inc., a wholly owned subsidiary of Litton Industries, Inc. The plaintiff charges the builder with various acts of negligence.

The ship was built in Pascagoula, Mississippi; the accident causing plaintiff's injuries occurred about 50 miles off the coast of California; and the plaintiff is a resident of Wisconsin.

The plaintiff claims that Ingalls Shipbuilding Division of Litton Systems, Inc. is an agent of Litton Industries, Inc. and, therefore, the parent, Litton Industries, Inc., is responsible for the alleged negligent conduct of Ingalls. The attempt by the plaintiff to achieve personal jurisdiction of the defendant, which is incorporated in Delaware and has its business offices in California, is based on this theory of agency.

The plaintiff attempted service of the summons and complaint in three ways: (1) by serving the attorney of the defendant in Beverly Hills, California; (2) by serving, in Madison, Wisconsin, the registered agent of Litton Industries Credit Corp. of New York, a wholly owned subsidiary of the defendant; and (3) by attempting service, which was refused, on an agent of Ingalls in Mississippi. If any of these methods was satisfactory, then the plaintiff must prevail on the defendant's motion to dismiss for lack of personal jurisdiction.

The service on the registered agent of Litton Industries Credit Corporation was presumably done under the auspices of rule 4(d) (3), Federal Rules of Civil Procedure, which states that service on a corporation can be made on an agent within the state. The plaintiff argues that Litton Industries Credit Corporation was a subsidiary controlled by Litton Industries, Inc. and was therefore an agent. The defendant contends that the two corporations have maintained their cor-

porate identities and denies that the subsidiary is an agent of the parent.

The plaintiff's theory of service on the defendant's attorney in California is based on rule 4(d) (7), Federal Rules of Civil Procedure, which allows service to be made under a state long arm statute. The relevant statute in Wisconsin is Wis.Stat. § 262.05(1) (d), which states that service can be had over a foreign corporation which:

"Is engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise."

Thus, once again, if the subsidiaries of the defendant, located in Wisconsin, are agents of the defendant, or the defendant's alter ego, then the defendant will be held to be engaged in "substantial activities" in Wisconsin, and the service in California will be valid.

In Travelers Ins. Co. v. George McArthur & Sons, 25 Wis.2d 197, 203, 130 N.W.2d 852, 854 (1964), the court said:

" *  *  * this subsection [262.05] contemplates a requirement similar to that of 'doing business' within the state which requires not just an isolated contact but 'substantial activities' which are 'continuous and systematic'."

Thus, the issue before the court is whether the defendant was "doing businss" in Wisconsin at the time of service. I think it was.

The defendant has cited a number of cases, notably Cannon Manufacturing Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925), which support the theory that a parent corporation is not doing business in a state merely because of the presence of its wholly owned subsidiaries, even if the officers of the two corporations are identical. Numerous decisions have followed the rule of Cannon. The plaintiff argues that such rulings are distinguishable because they are cases in which the parent was the manufacturer and the subsidiary was a dealer or a seller. This argument may have merit,

but it is not the basis for my decision that the instant defendant is doing business in Wisconsin.

In my opinion, jurisdiction in the case at bar can properly be based on International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and Industrial Research Corp. v. General Motors Corp., 29 F.2d 623 (N. D.Ohio 1928). In order for due process requirements to be met, *International Shoe*, 326 U.S. at p. 316, 66 S.Ct. at p. 158, requires only:

" *  *  * certain minimum contacts *  *  * such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

On its facts, Industrial Research Corp. v. General Motors Corp. is very close to the case at bar, even though the underlying suit was for a patent infringement. Industrial Research sued General Motors Corporation and attempted to get service by serving General Motors Truck Company, which was owned by General Motors Truck Corporation, which was owned by Yellow Truck & Coach Manufacturing Company, which was in turn owned by General Motors Corporation, the defendant.

Although the court in *General Motors* considered the *Cannon* line of cases, it found sufficient tangible evidence, not significantly different from the case at bar, to establish an agency. At 29 F.2d 627, the court stated:

"On the face of things, with this narrow record of fact, an imputation of agency for the movants, and especially for the General Motors Corporation, as the attitude and relationship of the local corporations, whose managers were served by the movants, would seem justified. It is supported, however, by more cogent proof; for exhibits are here, in the form of newspaper, sheet, and pamphlet advertising, put out in behalf of the General Motors Corporation, which imply most clearly that the alleged local agencies, although distinct corporations, are mere

adjuncts to the business of the General Motors Corporation, and, under it, to that of the other moving defendants."

The court goes on to point out that statements in the annual reports indicate the control which General Motors Corporation had over its subsidiaries. The corporate articles were also held to be relevant. The court at page 627 deemed this proof to be sufficient:

"The vast extent of the business of the General Motors Corporation and the variety of its enterprises are matters of such general notoriety, and the reasons why, to conduct such a diversified and extended business, it should employ corporate agencies, are so obvious, that little proof, if any, is necessary to hold the latter as mere adjuncts or agents, especially in the absence of any proof to the contrary; for the court might well take judicial notice of the extent of the business of such an extraordinary and notorious a corporation * * *."

On page 627, the court held that public policy dictates the finding of agency:

"It is against sound policy, when a corporation has grown so large, and it has entered into activities so various and so generally distributed, that it finds itself compelled to operate through many subsidiaries, doing nothing directly itself in carrying on its business, to permit it to enjoy exclusively the fruits of such subsidiary activity and to escape the concomitant responsibilities flowing therefrom.

The foregoing expression of public policy applies to Litton Industries, in my opinion; the facts of the case at bar fit closely with the *General Motors* decision. The defendant has several subsidiary corporations actively engaged in business in Wisconsin: Automated Business Systems, Appleton; Louis Allis, Milwaukee; Lippman Products, Milwaukee; Sturgis-Newport, Whitewater; Hewitt-Robins, Milwaukee; and Litton Industries Credit Corporation, Madison. The defendant contends that all are either independent

subsidiaries or divisions of these subsidiaries; that each has its own separate articles of incorporation, by-laws, officers, directors, and employees and at all times has maintained, independent of Litton Industries, Inc., separate books of account, bank accounts, ledger accounts, balance sheets and prepared its own income tax returns.

Annexed to an affidavit by the plaintiff, filed May 29, 1969, are a number of exhibits which tend to refute the defendant's position. The annual reports of Litton Industries, Inc. for the past several years indicate how the defendant represents itself to its shareholders and to the public. There are a number of passages in these annual reports which suggest substantial control of Litton Industries, Inc. over its subsidiaries. For example, in its 1965 annual report, Litton Industries, Inc. states:

"But even more important, we have been reporting on the efforts of people hard at work in the market place economy—65,500 people of Litton Industries contributing talent and technology to the manufacture of more than 6,000 products.

"To provide more efficient service to customers who choose to rent or lease Litton products rather than purchase them, the company in July assigned the responsibility for these services to Litton Industries Credit Corporation, a new division which will provide lease financing and time payment plans for Litton products."

In the annual reports of 1967 and 1968, the financial statements of Litton Industries, Inc. are in the form of consolidated statements, including the subsidiaries and divisions. Although each subsidiary may keep its own books and file its own financial statements, the fact that the parent company represents its assets to its shareholders in the form of consolidated statements indicates the close relationship which exists. Litton Industries, Inc. holds itself out to its shareholders and to the public as a cor-

poration which extends significant control over its subsidiaries.

In an affidavit, filed July 25, 1969, the plaintiff presents several more exhibits in the form of photographs, letterheads, and advertising pamphlets which illustrate that the Wisconsin subsidiaries of Litton Industries, Inc. hold themselves out to the public as divisions of Litton Industries, Inc.

A letter to the stockholders of Litton Industries, Inc., dated February 16, 1968, from the president and chairman of the board contains the following statement:

> "Litton's accounting policy is to immediately charge against current earnings any excess costs expected to be incurred in the performance of its contracts. During the second quarter, we set aside $8 million to offset future excess costs for the construction of 14 commercial vessels at Ingalls Shipbuilding division."

This statement suggests that Litton Industries, Inc., not Ingalls, was setting aside the money.

From the evidence accumulated by the plaintiff, some of which has been set out here, Litton Industries, Inc. was doing business and was engaged in substantial activity in Wisconsin. As in the *General Motors Case*, it would violate sound public policy for the court to hold otherwise upon the facts now before the court. In Steinway v. Majestic Amusement Co., 179 F.2d 681, 683, 18 A.L.R.2d 179 (10th Cir. 1949), the court stated:

> "Where a nonresident corporation is organized for the very purpose of holding and controlling the stock of a resident corporation and thus manages and directs the internal affairs of the resident corporation, courts have disregarded the corporate entity and treated it as the alter ego of the nonresident corporation for the purpose of service of process. See Bankers' Holding Corporation v. Maybury, 161 Wash. 681, 297 P. 740, 75 A.L.R. 1237; Clover Leaf Freight Lines v. Pacific Coast Wholesalers Ass'n, 7 Cir., 166 F.2d 626; Annotation, 75 A.L.R. 1242."

The court in *Steinway* concluded that the corporation in that case did not fit the above description, but that does not diminish the propriety of the quoted statement.

There is a line of cases, contra to Cannon Mfg. Co. v. Cudahy Co., supra, lead by United States v. Scophony Corporation of America, 333 U.S. 795, 68 S. Ct. 855, 92 L.Ed. 1091 (1948). In Flank Oil Co. v. Continental Oil Co. et al., 277 F.Supp. 357, 365 (D.Colo.1967), the court summarized this reasoning as follows:

> "*Scophony* teaches that the parent need not control day-to-day activity of the subsidiary as a prerequisite to jurisdiction. Rather the important test in that case appears to be whether the parent's control is sufficient to influence and control those decisions which might involve violation of the antitrust laws."

■ I recognize that the foregoing line of decisions concerned antitrust, that the *General Motors Case* involved patents, and that the *Cannon* line of cases related to manufacturers-sellers. However, it is my view that such distinctions are not relevant in resolving the problems existing in the case at bar. Under the *International Shoe Case*, the proper test concerns a search for "minimum contacts". Upon the facts in the case at bar, I find that Litton Industries, Inc., through its subsidiaries and divisions, was doing business in Wisconsin at the time of service of process upon its attorney in Beverly Hills, California; such service was sufficient to qualify under the *International Shoe* test and under Wis.Stat. § 262.05(1) (d). Therefore, the defendant's motion to dismiss for lack of personal jurisdiction must be denied.

■ Defendant's second motion to dismiss for lack of venue must also be denied since the test for venue, under 28 U.S.C. § 1391(c), is "doing business", and the court has already found

352

that the defendant was doing business in Wisconsin at the time of service. Carter-Beveridge Drilling Co. v. Hughes, 323 F.2d 417 (5th Cir. 1963). See also Metropolitan Staple Corp. v. Samuel Moore & Co., 278 F.Supp. 85, 87 (S.D. N.Y.1967) where the court held that the term "doing business" under 28 U.S.C. § 1391 "has the same meaning as for jurisdictional purposes."

 The final motion offered by the defendant is for a change of venue under 28 U.S.C. § 1404(a) which provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The decision to transfer is in the court's discretion, but a transfer is not to be liberally granted. The court in Chicago, Rock Island and Pacific R. R. Co. v. Igoe, 220 F.2d 299, 302 (7th Cir. 1955) said:

"In considering the three factors prescribed by the statute, the District Court should bear in mind that in filing an action the plaintiff is permitted to choose any proper forum and that the plaintiff's choice of forum should not be lightly set aside."

The plaintiff in the case at bar has chosen Wisconsin because this is his residence, his doctors live here, and his medical records are nearby at the Great Lakes Naval Training Center. He also alleges that a change of venue would be financially burdensome. See Butterick Company v. Will, 316 F.2d 111 (7th Cir. 1963). The defendant wishes a change of venue to the southern district of Mississippi, which has proximity to Pascagoula, where Ingalls Shipbuilding Division is situated. The defendant alleges that its witnesses live in Mississippi, and the records relating to construction of the ship are located there. It is my opinion that the plaintiff's choice of a forum should not be disturbed. The defendant's motion for a change of venue should be denied.

It is therefore ordered that the defendant's motions to dismiss for lack of jurisdiction, to dismiss for improper venue, and for a change of venue be and hereby are denied.