[No. 44160. En Banc. January 6, 1977.]

MARGARET N. CROSE, ET AL, *Respondents,* v. VOLKSWAGENWERK AKTIENGESELLSCHAFT, ET AL, *Petitioners.*

*Hackett, Beecher & Hart,* by *A. R. Hart,* for petitioners.

*Leo C. Kendrick* and *Joel E. Smith* (of *Gavin, Robinson, Kendrick, Redman & Mays*), for respondents.

DOLLIVER, J.—This is a products liability case in which respondents claim injury from a defective automobile. We issued a write of certiorari to review the trial court's order denying the following motions: Motion by Volkswagenwerk Aktiengesellschaft (VW–Germany) and Volkswagen of America, Inc. (VW–America), to dismiss for lack of jurisdiction; motion by VW–Germany and VW–America to quash service of process; and motion by VW–America for a summary judgment.

The accident giving rise to this litigation occurred in California while Margaret Crose, one of the respondents, was a passenger in a Volkswagen microbus owned by residents of California. The respondents are residents of Yakima County, Washington. The vehicle was ordered in California for delivery in Germany and was subsequently shipped by the owner to California.

The trial court held that jurisdiction over the petitioners was properly obtained pursuant to RCW 4.28.080, which reads, in part:

The summons shall be served by delivering a copy thereof, as follows:

. . .

(10) If the suit be against a foreign corporation or nonresident joint stock company, partnership or association doing business within this state, to any agent, cashier or secretary thereof.

Service of process was made upon an officer of VW–Germany in Germany where it is incorporated. VW–America, a New Jersey corporation, was served in that state. Riviera Motors, an Oregon corporation, was served in Oregon and in Washington where it maintains a registered agent, CT Corporation System. VW–Germany and VW–America each contend that they were not "doing business" in the state of Washington within the meaning of RCW 4.28.080(10); that to subject either of them to in personam jurisdiction would violate the due process clause of the Fourteenth Amendment; and that CT Corporation, while acting as an agent

for Riviera Motors, was not an adequate agent for VW–Germany or VW–America. We disagree on each point.

VW–Germany is a German corporation which engages in the manufacture of Volkswagen automobiles, parts, and accessories. It manufactured the automobile in which Mrs. Crose was injured. VW–Germany is also listed as the seller of the Volkswagens purchased through the tourist delivery program, through which the automobile in question was purchased. VW–Germany has no office or place of business in Washington under the name Volkswagenwerk Aktiengesellschaft, nor does it pay any state tax.

VW–America, a New Jersey corporation, is the sole importer of Volkswagen automobiles and products into the United States. All the stock in VW–America is owned by VW–Germany. Four of VW–America's 6–member board of directors are on the board of directors of VW–Germany. VW–America sells the products to regional distributors; it does not sell directly to dealers in the state of Washington.

Riviera Motors, originally joined as a party defendant, was dismissed by the trial court pursuant to a motion for a summary judgment. Riviera Motors, incorporated in Oregon, is the regional distributor of Volkswagen automobiles in the Pacific Northwest and Alaska. Riviera Motors did not sell nor did it service the vehicle in question. Neither VW–Germany nor VW–America own stock in Riviera.

The record indicates that the contractual controls exerted by VW–America over Riviera Motors are extensive. No change in the beneficial ownership of Riviera or in the makeup of its executives can be made without the prior written consent of VW–America. All appointments of dealers in the state of Washington by Riviera require the written consent of VW–America. Riviera must maintain certain minimum financial requirements set by VW–America which are subject to review and revision by VW–America. The text of all dealer agreements must be approved in writing by VW–America, and Riviera's approval of any structural change or change in location, beneficial ownership or management of a dealership

requires the prior written consent of VW–America. Riviera must use such accounting forms, business machines, data processing equipment, and other office equipment as may be required by VW–America, as well as the Volkswagen uniform accounting system. This is merely a sampling of the extensive contractual control of VW–America over Riviera's organization, finances, advertising, and personnel.

The statute in question, RCW 4.28.080(10), was enacted into law in 1893. It preceded and is not to be confused with Washington's long–arm statute, RCW 4.28.185. In the past, this court has held RCW 4.28.080(10) requires that the nonresident defendant transact a substantial part of its ordinary business in the state. The business must be continuous in that it is distinguished from merely a casual or occasional transaction. It must be of such a character as to give rise to a legal obligation. *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945); *Alto v. Hartwood Lumber Co.,* 135 Wash. 368, 372, 237 P. 987 (1925); *Rich v. Chicago, B. & Q. R.R.,* 34 Wash. 14, 17, 74 P. 1008 (1904). *Also see generally* G. Hornstein, *Corporation Law and Practice* § 581 (1959).

■ This court has not previously been confronted with the propriety of in personam jurisdiction under RCW 4.28.080(10) over a foreign corporation with a distribution system comparable to that of the Volkswagen corporations. Petitioners have argued that our decision be determined by *State v. Northwest Magnesite Co.,* 28 Wn.2d 1, 182 P.2d 643 (1947), in which this court held that the two foreign corporations holding the stock in a separate domestic corporation were not "doing business" within the state of Washington. *See also Bankers' Holding Corp. v. Maybury,* 161 Wash. 681, 297 P. 740, 75 A.L.R. 1237 (1931). The stock ownership of VW–Germany in VW–America is not decisive in this case, and we find *State v. Northwest Magnesite Co., supra,* to be inapplicable.

We have no hesitancy in finding that the distribution scheme for Volkswagen products provides a sufficient basis for holding that VW–America and VW–Germany are

"doing business" in the state of Washington. Our holding is bolstered in this case by the extensive contractual control of Riviera ·by VW–America and the complete stock owner-ship and majority membership on the board of directors of VW–America by VW–Germany. What constitutes "doing business" is not easily formulated. The answer to this question is necessarily dependent upon the facts of each situation. However, it is clear here that the economic reali-ties are such that the purchase of Volkswagen products in this state generates income for the manufacturer (VW–Germany) and the importer (VW–America) as well as the regional distributor and local dealer. This is not an unforseeable or fortuitous event. Rather, it is the result of a well–organized, fully–integrated worldwide chain of distri-bution. *Buckeye Boiler Co. v. Superior Court,* 71 Cal. 2d 893, 458 P.2d 57, 80 Cal. Rptr. 113 (1969); *Hughes v. Kaiser Jeep Corp.,* 246 F. Supp. 557 (E.D.S.C. 1965); *see also Delray Beach Aviation Corp. v. Mooney Aircraft, Inc.,* 332 F.2d 135 (5th Cir. 1964); *Yoder v. Yamaha Internat'l Corp.,* 331 F. Supp. 1084 (E.D. Pa. 1971). In regard to VW–Ger-many, we adopt the reasoning of the California Supreme Court in *Buckeye Boiler Co. v. Superior Court, supra* at 902, that:

A manufacturer's economic relationship with a state does not necessarily differ in substance, nor should its amenability to jurisdiction necessarily differ, depending upon whether it deals directly or indirectly with residents of the state. . . .

A manufacturer whose products pass through the hands of one or more middlemen before reaching their ultimate users cannot disclaim responsibility for the total distribution pattern of the products. If the manufacturer sells its products in circumstances such that it knows or should reasonably anticipate that they will ultimately be resold in a particular state, it should be held to have purposefully availed itself of the market for its products in that state.

Were it not for the fact that Riviera was the regional dis-tributor, the Volkswagen entities would, of necessity, be

doing business in this state directly, through a branch, if they intended to compete in the Washington market. Those corporations involved in the Volkswagen distribution scheme should not be allowed to circumvent the rights of the citizens of this state or to provide themselves with immunity merely by their choice of organizational form.

We are aware that other courts, when confronted with the same distribution scheme and a similar state jurisdictional statute have reached a contrary result. *Delagi v. Volkswagenwerk AG of Wolfsburg, Germany,* 29 N.Y.2d 426, 278 N.E.2d 895 (1972). *See also Lynch v. Volkswagen of America, Inc.,* 322 F. Supp. 1286 (D. Minn. 1970); *Ritter v. Volkswagen Werk GMBH,* 322 F. Supp. 569 (D. Minn. 1970). We disagree. Furthermore, in none of these cases does it appear that the court fully considered either the intricacy or the economic reality of the VW–Germany and VW–America distribution system.

Petitioners next contend that the assertion of personal jurisdiction over VW–Germany and VW–America would violate the due process clause of the fourteenth amendment to the United States Constitution. An examination of petitioners' due process rights as currently defined by the United States Supreme Court's decisions reveals that petitioners' rights are not jeopardized. *See Callahan v. Keystone Fireworks Mfg. Co.,* 72 Wn.2d 823, 435 P.2d 626 (1967); *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 381 P.2d 245 (1963).

The constitutional limits on assertion of jurisdiction over a foreign corporation are found in *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945), and its successors, *Hanson v. Denckla,* 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958); *McGee v. International Life Ins. Co.,* 355 U.S. 220, 2 L. Ed. 2d 223, 78 S. Ct. 199 (1957); *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 96 L. Ed. 485, 72 S. Ct. 413 (1952); and *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 94 L. Ed. 1154, 70 S. Ct. 927 (1950). *See generally*

19 A.L.R.3d 13 (1968). In *International Shoe Co. v. Washington,* the Supreme Court stated, at page 316:

> [The corporation must] have certain minimum contacts with it [the forum] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

In *McGee v. International Life Ins. Co., supra* at 222, the court observed:

> Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents.

The due process clause of the Fourteenth Amendment permits the State of Washington to obtain in personam jurisdiction over a foreign corporation for a cause of action arising entirely from activities occurring outside of the forum. *Perkins v. Benguet Consol. Mining Co., supra; International Shoe Co. v. Washington, supra* at 318–19.

■ The essence of the issue here is one of fairness to the parties. Factors which we consider in concluding that VW–Germany and VW–America are justifiably subject to service of process in the state of Washington include the interest of the State in providing a forum for its residents *(McGee v. International Life Ins. Co., supra);* the ease with which the respondents could gain access to another forum *(Travelers Health Ass'n v. Virginia, supra);* the amount, kind, and continuity of activities carried on by the foreign corporations in the state of Washington *(Perkins v. Benguet Consol. Mining Co., supra);* the significance of the economic benefits accruing to the foreign corporations as a result of activities purposefully conducted in the state of Washington *(Hanson v. Denckla, supra; Callahan v. Keystone Fireworks Mfg. Co., supra; Tyee Constr. Co. v. Dulien Steel Prods, Inc., supra);* and the foreseeability of injury resulting from the use of Volkswagen products manufactured by VW–Germany, imported by VW–America, distributed by Riviera Motors, and sold by Washington retailers. *Oliver v. American Motors Corp.,* 70 Wn.2d 875,

425 P.2d 647 (1967); *Callahan v. Keystone Fireworks Mfg. Co., supra* at 838.

■ Petitioners assert that CT Corporation, although an agent for Riviera Motors, was not an adequate agent for receiving service of process on VW–Germany or VW–America. In *State ex rel. Western Canadian Greyhound Lines v. Superior Court*, 26 Wn.2d 740, 757, 175 P.2d 640 (1946), cited by petitioners, this court cites 20 C.J.S. *Corporations* § 1942(b)(1940):

> "Service of process on an agent of a foreign corporation doing business within the state must be on an agent representing the corporation with respect to such business. It must be made on an authorized agent of the corporation who is truly and thoroughly a representative of it, *rather than a mere servant or employee,* or a person whose authority and duties are limited to a particular transaction. The agent must be an agent in fact, not merely by construction of law, and must be one having in fact *representative capacity and derivative authority.* However, it is not necessary that express authority to receive or accept service of process shall have been conferred by the corporation on the person served. It is sufficient if authority to receive service may be reasonably and justly implied.
>
> *"The question turns on the character of the agent, and, in the absence of express authority given by the corporation, on a review of the surrounding facts and the inferences which may properly be drawn therefrom."*

(Last italics ours.)

We find from all the surrounding facts that Riviera Motors occupied such a responsible representative status in relationship to VW–Germany and VW–America to make it reasonably certain that it would turn over the process to those called upon to answer. Thus, service on its agent, CT Corporation, was adequate service on VW–Germany and VW–America. *Fiat Motor Co. v. Alabama Imported Cars, Inc.,* 292 F.2d 745 (D.C. Cir. 1961), *cert. denied,* 368 U.S. 898, 7 L. Ed. 2d 94, 82 S. Ct. 175 (1961). That CT Corporation failed to advise its principal of the service in no way affects the validity of such service. We base our conclusion

on the previously discussed intricate linking of VW–Germany, VW–America and Riviera in the worldwide manufacture, sales, and distribution network.

Finally, VW–America contends that the Superior Court erred in failing to grant its motion for a summary judgment. It is VW–America's position that the only admissible evidence in the record establishes that VW–America did not import, distribute, or otherwise control the vehicle in question and that the facts before the Superior Court controverting that position are inadmissible as hearsay. The trial judge's denial of the summary judgment was based on his conclusion that VW–America and VW–Germany occupy the same position in relationship to the plaintiffs because the stock ownership and interlocking directorates connect those corporations together as one. This theory was not properly challenged before the trial court and is not properly challenged here. Consequently, we will not consider it. *See Pedersen v. Immanuel Lutheran Church,* 57 Wn.2d 576, 358 P.2d 549 (1961). The trial court's judgment renders the question of the admissibility of the evidence irrelevant.

We affirm the Superior Court's holdings on each of the petitioners' motions.

STAFFORD, C.J., ROSELLINI, HUNTER, HAMILTON, UTTER, BRACHTENBACH, and HOROWITZ, JJ., and HALE, J. Pro Tem., concur.

Petition for rehearing denied March 18, 1977.