[No. 24925-8-I.   Division One.   January 28, 1991.]

MBM FISHERIES, INC., *Respondent*, v. BOLLINGER MACHINE SHOP AND SHIPYARD, INC., *Petitioner*.

Beth S. Ginsberg and Bogle & Gates, for petitioner.

Margaret A. Sundberg and Williams, Kastner & Gibbs, for respondent.

WINSOR, J.*—Bollinger Machine Shop and Shipyard, Inc., (Bollinger) seeks review of the denial of its motion for summary judgment of dismissal. Bollinger, a Louisiana corporation, unsuccessfully argued that the trial court lacked both general and personal jurisdiction over contract and tort claims brought against Bollinger by MBM Fisheries, Inc. (MBM). We reverse the trial court and dismiss the action against Bollinger.

I

BACKGROUND

Bollinger, a shipyard that builds and repairs boats, is incorporated in Louisiana and has its principal place of business in Lockport, Louisiana. MBM is a commercial fishing operation based in Seattle and incorporated in Washington.

The dispute out of which this case arises began when Jaromir Mach, a principal of MBM, took one of MBM's

---

*Judge Robert W. Winsor was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to CAR 21(c).

boats to Bollinger in Lockport, Louisiana, to obtain an estimate of the cost of converting the vessel into a crab boat. Mach and Bollinger negotiated a contract in Louisiana for the repair work. Bollinger later put the agreement in writing and sent it to Mach, who was then in Alaska, via a Seattle Telecopier machine. Mach made some changes to the written agreement and sent it back via Seattle to Bollinger in Louisiana. Mach returned to Louisiana in August 1988 to pick up the boat. At that time, a dispute arose as to the amount owed under the contract. Mach paid the amount Bollinger demanded but reserved MBM's right to sue.

MBM filed suit against Bollinger in King County Superior Court, alleging breach of contract, breach of warranty, negligence and conversion. Bollinger moved for a summary judgment of dismissal for lack of personal jurisdiction. The trial court denied Bollinger's motion. This court granted discretionary review.

The parties do not dispute the extent of Bollinger's other contacts with the State of Washington. Bollinger has no office or employees in Washington, is not listed in any Washington telephone directory, and has no appointed agent for service of process in Washington. Bollinger had run advertisements in four trade publications: one regional publication entitled "Alaska Fishermen's Journal" published in Seattle and three national publications that may or may not have been sold in Washington. None of the advertisements generated any response from Washington residents. Bollinger had also done business with four Washington residents other than MBM. Three of the business transactions involved repair work on vessels in Louisiana. In the fourth transaction, Bollinger used a Washington boat broker to locate a barge for a client of Bollinger's. The Washington broker suggested the name of a Louisiana resident from whom Bollinger's client ultimately purchased a barge, and the broker paid Bollinger a commission. Finally, a vice–president of Bollinger and another Bollinger employee represented the company at a trade show in

Seattle in November 1988, 3 months after MBM picked up its boat in Louisiana. MBM served process on Bollinger at that time.

## II
### STANDARD OF REVIEW

█ If the underlying facts are undisputed, the trial court's assertion of personal jurisdiction is a question of law reviewable de novo. *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 380 (9th Cir. 1988), *cert. granted,* 111 S. Ct. 39 (1990). MBM, as plaintiff, bears the burden of proving that jurisdiction exists. *Shute,* 897 F.2d at 379. When, as in this case, the trial court's ruling is based solely on a consideration of affidavits and discovery, only a prima facie showing of jurisdiction is required. *Pedersen Fisheries, Inc. v. Patti Indus., Inc.,* 563 F. Supp. 72, 74 (W.D. Wash. 1983). The allegations in MBM's complaint must be taken as correct for purposes of appeal. *Shute,* 897 F.2d at 380.

## III
### GENERAL JURISDICTION

█ Under Washington law, a state court may exercise either general or specific personal jurisdiction over a nonresident defendant. RCW 4.28.080(10) authorizes general jurisdiction over a nonresident defendant without regard to whether the cause of action is related to the defendant's contacts with the forum state. Although that provision appears only to address service of process, the Washington Supreme Court has held that it confers general jurisdiction over a nonresident defendant "doing business" in this state, that is, transacting substantial and continuous business of such character as to give rise to a legal obligation. *See Crose v. Volkswagenwerk Aktiengesellschaft,* 88 Wn.2d 50, 54, 558 P.2d 764 (1977).

In upholding the trial court's assertion of general jurisdiction over a nonresident automobile manufacturer, the court in *Crose* first determined that the defendant corporation was "doing business" in Washington. *Crose,* at 54–55. Responding to the defendant's argument that the exercise

of jurisdiction would nonetheless violate due process, the *Crose* court went on to observe that five factors are relevant in determining whether the exercise of general jurisdiction over a nonresident defendant violates due process: (1) the interest of the state in providing a forum for its residents; (2) the ease with which the party asserting jurisdiction could gain access to another forum; (3) the amount, kind and continuity of activities carried on by the foreign corporation in the state; (4) the significance of economic benefits accruing to the foreign corporation as a result of activities purposefully conducted in the state; and (5) the foreseeability of injury resulting from the use of the foreign corporation's product. *Crose,* 88 Wn.2d at 57.

As this court recently observed, the *Crose* court essentially resolved the issue of general jurisdiction by employing a "doing business" analysis, the same inquiry as the third factor under the *Crose* test for due process.[1] *See Hein v. Taco Bell, Inc.,* 60 Wn. App. 325, 330, 803 P.2d 329 (1991). The *Crose* court recited the other five factors only summarily in order to confirm that the assertion of general jurisdiction over the defendant did not violate due process.[2]

---

[1] Our discussion in *Hein v. Taco Bell, Inc.,* 60 Wn. App. 325, 803 P.2d 329 (1991) draws upon the views of the noted Washington commentators, Lewis Orland and Karl Tegland, who assert that only the third *Crose* factor is relevant to a general jurisdiction analysis and that the remaining *Crose* factors address concerns unique to specific jurisdiction. *See* 14 L. Orland & K. Tegland, Wash. Prac., *Trial Practice—Civil* § 13, at 4–5 (4th ed. Supp. 1990).

[2] Our statements in *Banton v. Opryland U.S.A., Inc.,* 53 Wn. App. 409, 416, 767 P.2d. 584 (1989), *overruled on other grounds in Shute v. Carnival Cruise Lines,* 113 Wn.2d 763, 783 P.2d 78 (1989), and *Osborne v. Spokane,* 48 Wn. App. 296, 298, 738 P.2d 1072 (1987), *overruled on other grounds in Scott Fetzer Co. v. Weeks,* 114 Wn.2d 109, 786 P.2d 265 (1990), that the five *Crose* factors determine whether a nonresident defendant is "doing business" in Washington appear to be based on a misreading of *Crose.* As noted above, the court in *Crose* first determined that the nonresident defendant was "doing business" in Washington and went on to recite what have become known as the five *Crose* factors only in response to the defendant's argument that assertion of jurisdiction would nonetheless violate due process. Of course, given the determination that the third *Crose* factor was not satisfied in *Banton,* 53 Wn. App. at 417–18, or *Osborne,* 48 Wn. App. at 299–300, the conclusion in each of these cases that the defendants

Presumably, this is because assertion of jurisdiction over a nonresident corporation that is "doing business" in Washington necessarily comports with due process. *Taco Bell,* at 330. We therefore concluded in *Taco Bell* that the primary inquiry in a general jurisdiction analysis is whether the nonresident defendant is "doing business" in Washington, that is, whether the amount, kind and continuity of activities carried on by the nonresident defendant in Washington are continuous and substantial and of such character as to give rise to a legal obligation. *Taco Bell,* at 330.

Bollinger's contacts with Washington are isolated and minimal and do not support a finding that Bollinger engaged in continuous or substantial activity in this state. Although Bollinger did perform vessel repair work for three Washington residents other than MBM, all of this work was performed in Louisiana. Moreover, Bollinger did not solicit any of this repair work: in each case the Washington customer contacted Bollinger in Louisiana and delivered the vessel to Bollinger's shipyard in Louisiana. The business deal for which Bollinger received a brokerage fee and Bollinger's one–time participation in the Seattle trade show were the only Washington business contacts initiated by Bollinger. This is hardly continuous or substantial activity.

MBM also points to Bollinger's magazine advertisements as evidence that Bollinger is "doing business" in Washington. Although Bollinger arguably placed the ads to solicit clients in Washington, advertisements in four magazines—three of which may not have even been distributed in Washington, and none of which generated any Washington business—do not suggest continuous or substantial business activity. *See Shute,* 897 F.2d at 381 (contacts, including advertising in local media, not sufficient to confer general jurisdiction).

Finally, MBM points to the fact that MBM served process on Bollinger's vice–president in Seattle. Service of

---

were not "doing business" in Washington is not affected by the apparent misreading of *Crose.*

process on an agent of a foreign corporation who is merely "present" in this state, however, cannot alone confer general jurisdiction. *See Bershaw v. Sarbacher,* 40 Wn. App. 653, 657, 700 P.2d 347 (1985); *see generally* 14 L. Orland & K. Tegland, Wash. Prac., *Trial Practice—Civil* § 8 (4th ed. 1986 & Supp. 1990).[3]

■ Nor do Bollinger's contacts with Washington, each individually de minimus, collectively constitute continuous and substantial contact with Washington. *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415–18, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984) (no general jurisdiction over foreign corporation that sent officers to forum state for a negotiating session, accepted checks drawn on bank in forum state, purchased equipment in forum state and sent personnel to forum state for training); *Shute,* 897 F.2d at 381 (contacts limited to advertising in local media, mailing of brochures and payment of commissions to local travel agents, conducting of promotional seminars and small percentage of total sales to Washington residents not sufficient to establish general jurisdiction); *Congoleum Corp. v. DLW Aktiengesellschaft,* 729 F.2d 1240, 1242–43 (9th Cir. 1984) (foreign corporation's sales and marketing efforts in forum state, including solicitation of orders, promotion of products to potential customers through mail and showroom displays and attendance at trade shows and sales meetings, were insufficient to support general jurisdiction); *Banton v. Opryland U.S.A., Inc.,* 53

---

[3]*Burnham v. Superior Court,* __ U.S. __, 109 L. Ed. 2d 631, 110 S. Ct. 2105 (1990) does not alter this result. Because no opinion received a majority, the *Burnham* decision is limited to its facts. *See United States v. Martino,* 664 F.2d 860, 872–73 (2d Cir. 1981), *cert. denied,* 458 U.S. 1110 (1982). In any event, the nonresident defendant in *Burnham* was a natural person. Whether or not a nonresident natural person may be subject to the jurisdiction of this State by virtue of his or her mere presence in Washington, an issue we do not here decide, service of process on an agent of a nonresident corporation who is merely "present" in Washington does not, without more, comport with due process. *Cf. Nehemiah v. Athletics Congress of U.S.A.,* 765 F.2d 42, 47 (3d Cir. 1985) (even if service on a natural person merely present in forum state satisfies "minimum contacts," service on agent of unincorporated association while in forum state is insufficient).

Wn. App. 409, 417–18, 767 P.2d 584 (1989) (one local sales presentation, payment of commissions to Washington travel brokers for occasional ticket sales, and occasional local broadcasts of music taped at defendant's out–of–state facility not sufficient to support general jurisdiction), *overruled on other grounds in Shute v. Carnival Cruise Lines*, 113 Wn.2d 763, 783 P.2d 78 (1989).

Having concluded that Bollinger was not "doing business" in Washington, general jurisdiction does not properly lie under RCW 4.28.080(10). We therefore need not consider whether, based on the other four *Crose* factors, assertion of jurisdiction over Bollinger would violate due process.[4]

## IV
### SPECIFIC JURISDICTION

In the alternative, MBM argues that specific jurisdiction over Bollinger exists under RCW 4.28.185, Washington's long–arm statute. Under this statute, a Washington court may assert jurisdiction over a nonresident defendant only if the cause of action arises from the defendant's activities in

---

[4]Were it necessary to consider the other four *Crose* factors our review of the record would lead us to conclude that assertion of general jurisdiction over Bollinger would violate due process. First, although Washington certainly has an interest in providing a forum for its residents, that interest is less compelling where, as here, the acts causing the alleged injury did not occur in Washington and had only a resulting effect in this state. *See Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1288 (9th Cir. 1977). Second, it is no more of a hardship for MBM to bring this action in Louisiana than it is for Bollinger to defend itself in Washington. Concern for the defendant generally takes precedence where the burdens are approximately equal. *See generally World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980). As to the fourth *Crose* factor, the only substantiated economic benefit resulting from Bollinger's "purposeful activity" in Washington—the advertising, the brokerage deal and the trade show—is the brokerage commission for the one transaction, hardly a significant economic benefit. Finally, we cannot say that, simply by entering into and allegedly breaching a contract with a Washington resident, Bollinger should have anticipated being haled into court in Washington, the relevant inquiry under the fifth *Crose* factor. *Cf. Insurance Co. of North Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981) (on nearly identical facts, court held that knowledge that injury might occur in forum state was not sufficient to support specific jurisdiction).

Washington. RCW 4.28.185(3). Except as limited by its terms, Washington's long–arm statute authorizes courts to exercise jurisdiction over nonresident defendants to the extent permitted by the due process clause of the United States Constitution. *Shute v. Carnival Cruise Lines,* 113 Wn.2d 763, 766, 783 P.2d 78 (1989).

▪ MBM first contends that jurisdiction is proper under RCW 4.28.185(1)(a), which confers jurisdiction over causes of action arising from a nonresident defendant's "transaction of any business within this state". For jurisdiction to exist under that subsection, the following factors must coincide:

> (1) The . . . foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

(Footnotes omitted.) *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 115–16, 381 P.2d 245 (1963), *quoted in Shute,* 113 Wn.2d at 767.

▪ We must first determine, then, whether in dealing with MBM Bollinger engaged in purposeful activity or consummated some transaction in Washington. The mere execution of a contract with a resident of the forum state does not alone automatically fulfill the "purposeful act" requirement. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478–79, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985). Instead, the entire business transaction, including prior negotiations, contemplated future consequences, the terms of the contract and the parties' actual course of dealing, must be evaluated in determining whether the defendant purposefully established minimum contacts by entering into a contract with a resident of the forum state. *Burger King,* 471 U.S. at 478–79.

Our review of the evidence leads us to conclude that Bollinger did not purposefully establish minimum contacts in Washington in the course of its transaction with MBM. MBM sought out Bollinger in Louisiana and the parties negotiated the contract in Louisiana. MBM's argument that part of the contract was consummated in Seattle because the written agreement was transmitted from Louisiana to Alaska via a Seattle Telecopier is simply absurd. Further, all the work was performed in Louisiana and the vessel was delivered in Louisiana. The contract did not contemplate any continuing obligations on the part of Bollinger tying it to Washington, nor was there any ongoing business relationship. The mere fact that Bollinger knew that the subject of the contract might be used in Washington or that its failure timely to return the subject of the contract might cause damage to MBM in Washington is insufficient to establish purposeful interjection into the forum. *See Insurance Co. of North Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981) (purposeful interjection too slight to subject defendant to personal jurisdiction in Alaska where defendant shipyard did not perform services or solicit business in Alaska and only contact was defendant's negligent repair of plaintiff's boat in a distant forum which caused injury in Alaska).

The only activities of Bollinger in Washington that could arguably be deemed "purposeful"—the advertising, the attendance at the trade show and the brokerage transaction—had no relation whatsoever to MBM's cause of action. These activities cannot be relied on to support jurisdiction under RCW 4.28.185(1)(a) because they do not satisfy the second *Tyee* requirement, that the cause of action arise from a purposeful act in the forum state. Having found the first two *Tyee* requirements lacking, we conclude that jurisdiction does not exist under RCW 4.28.185(1)(a).[5]

---

[5]The analysis under the final *Tyee* inquiry—whether the assumption of jurisdiction over Bollinger would offend traditional notions of fair play and substantial

MBM's alternative basis for asserting jurisdiction, RCW 4.28.185(1)(b), authorizes jurisdiction over a nonresident defendant who has committed a tortious act within the state. The standards announced in *Tyee* for determining the propriety of jurisdiction under RCW 4.28.185(1)(a) also apply to RCW 4.28.185(1)(b). *See Smith v. York Food Mach. Co.,* 81 Wn.2d 719, 721, 504 P.2d 782 (1972). We need not determine whether the requirements set forth in *Tyee* are satisfied in this case, however, because we conclude that Bollinger did not commit a tortious act within this state.

■ A tortious act is deemed to have occurred in Washington for purposes of the long-arm statute if the injury occurred in Washington, because the injury is considered inseparable from the tortious act. *Grange Ins. Ass'n v. State,* 110 Wn.2d 752, 757, 757 P.2d 933 (1988), *cert. denied,* 490 U.S. 1004 (1989). An injury "occurs" in Washington if the last event necessary to make the defendant liable for the alleged tort occurred in Washington. *Nixon v. Cohn,* 62 Wn.2d 987, 995-97, 385 P.2d 305 (1963). MBM alleges in its complaint that Bollinger was negligent in failing to repair the vessel in a timely and workmanlike manner and that Bollinger converted MBM's property by refusing to release the vessel until MBM paid more than required under the contract. Thus, the last events necessary to render Bollinger liable for both negligence and conversion occurred in Louisiana, not in Washington.

■ In any event, even if we were to determine that the alleged tortious acts did occur in Washington, an analysis of the *Tyee* requirements would nonetheless persuade us that specific jurisdiction does not exist under RCW 4.28-.185(1)(b). As we discussed in connection with our analysis of jurisdiction under RCW 4.28.185(1)(a), the *Tyee*

---

justice—is essentially the same as the 5-factor *Crose* inquiry discussed in part III above. *Compare Tyee,* 62 Wn.2d at 115-16 *with Crose,* 88 Wn.2d at 57. Thus, were it necessary to reach the last *Tyee* factor, we would find that requirement lacking as well. See footnote 4.

requirements of purposefulness and fair play/substantial justice are not present. Assertion of jurisdiction under RCW 4.28.185(1)(b) is therefore improper. *See Grange,* 110 Wn.2d at 759–60 (RCW 4.28.185(1)(b) analysis must include a determination of purposefulness); *Hogan v. Johnson,* 39 Wn. App. 96, 101–02, 692 P.2d 198 (1984) (even if tortious act was committed in Washington because of in–state effects of out–of–state tort, due process considerations would preclude exercise of jurisdiction in case at bar).

In summary, we hold that the trial court lacked both general and specific jurisdiction over Bollinger. We therefore reverse the trial court and dismiss MBM's action against Bollinger.

PEKELIS, J., and DEIERLEIN, J. Pro Tem., concur.