**State of WASHINGTON, DE-PARTMENT OF REVE-NUE Plaintiff,**

**v.**

**WWW.DIRTCHEAPCIG.COM, INC., Defendant.**

**No. C02–2438L.**

United States District Court, W.D. Washington.

May 2, 2003.

David M Hankins, Debra Casparian, Attorney General's Office Department of Revenue, Olympia, WA, for Revenue Department of the State of Washington, plaintiff.

Frederick B Rivera, Perkins Coie, Seattle, WA, John W Rogers, Elizabeth A Teutenberg, Bryan Cave LLP, St Louis, MO, for DC Inc aka Dirt Cheap Cigarettes dba Dirtcheapcigarettes.com, defendant.

## ORDER DENYING MOTION TO DISMISS

LASNIK, District Judge.

## I. INTRODUCTION

This matter comes before the Court on defendant www.dirtcheapcig.com, Inc.'s

("Dirtcheap") motion to dismiss (Dkt.# 14). For the reasons set forth in this Order, the Court denies Dirtcheap's motion.

## II. DISCUSSION

### A. Background.

Dirtcheap is a Missouri corporation with its principal place of business in Paducah, Kentucky. Dirtcheap maintains a website through which its customers may purchase cigarettes. Customers who visit the website choose from a variety of cigarettes and select a method of delivery. Customers pay for the products and delivery by credit card through the interactive website, or mail a check to Dirtcheap.

Plaintiff Washington State Department of Revenue ("the State") alleges that Dirtcheap is violating the Jenkins Act, 15 U.S.C. §§ 375–78, by failing to provide it with information as required by the Act. The relevant portion of the Act provides:

Any person who sells or transfers for profit cigarettes in interstate commerce, whereby such cigarettes are shipped into a State taxing the sale or use of cigarettes, to other than a distributor licensed by or located in such State, or who advertises or offers cigarettes for such a sale or transfer and shipment, shall-

(1) first file with the tobacco tax administrator of the State into which such shipment is made or in which such advertisement or offer is disseminated a statement setting forth his name and trade name (if any), and the address of his principal place of business and of any other place of business; and

(2) not later than the 10th day of each calendar month, file with the tobacco tax administrator of the State into which such shipment is made, a memorandum or copy of the invoice covering each and every shipment of cigarettes made during the previous calendar month into such State; the memorandum or invoice in each case to include the name and address of the person to whom the shipment was made, the brand, and the quantity thereof.

15 U.S.C. § 376(a).

Dirtcheap contends that this action should be dismissed because the Court lacks personal jurisdiction over it. (Motion at 6). Dirtcheap also contends that the action should be dismissed for failure to state a claim upon which relief may be granted because the State does not have the authority to prosecute alleged violations of the Jenkins Act. (Motion at 17).

### B. Standard.

In a Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction the plaintiff bears the burden of proof on the necessary jurisdictional facts. *Flynt Distrib. Co., Inc. v. Harvey,* 734 F.2d 1389, 1392 (9th Cir.1984).

In the context of a Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, a court must (1) construe the complaint in the light most favorable to the plaintiff, (2) accept all well-pleaded factual allegations as true, and (3) determine whether the plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir.1996).

### C. Personal Jurisdiction.

For a forum state to possess personal jurisdiction over an out-of-state defendant, that defendant must "have certain minimum contacts with the forum state, such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66

S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

■ A district court applies the law of the state in which it is located to determine the defendant's amenability to a lawsuit. *Peterson v. Kennedy*, 771 F.2d 1244, 1262 n. 12 (9th Cir.1985). To establish personal jurisdiction, the State must demonstrate that Washington's long-arm statute confers personal jurisdiction and that the exercise of that jurisdiction meets the constitutional requirements of due process. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir.2002). Washington's long-arm statute provides for personal jurisdiction over non-residents who conduct business within the state. RCW 4.28.185(1)(a). That statute "authorizes courts to exercise jurisdiction over nonresident defendants to the extent permitted by the due process clause of the United States Constitution." *MBM Fisheries, Inc. v. Bollinger Mach. Shop and Shipyard, Inc.*, 60 Wash.App. 414, 423, 804 P.2d 627 (1991).

"Where a defendant has 'substantial' or 'continuous and systematic' contacts with the forum state, there is a sufficient relationship between the defendant and the state to support 'general personal jurisdiction' even if the cause of action is unrelated to the defendant's forum activities." *Peterson*, 771 F.2d at 1261 (citing *Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir.1977)). Where such "substantial" or "continuous and systematic" contacts are lacking, a court may exercise "limited" or "specific" personal jurisdiction depending upon "the nature and quality of the defendant's contacts in relation to the cause of action." *Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir.1977). Although the State does not concede that this Court does not have general jurisdiction, it limited its response to discussion of specific jurisdiction. *See* Response at 4.

■ The Ninth Circuit utilizes a three-part test for determining whether due process allows for the exercise of specific jurisdiction: "(1) the nonresident defendant must have purposefully availed himself of the privilege of conducting activities in the forum by some affirmative act or conduct; (2) plaintiff's claim must arise out of or result from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable." *Roth v. Garcia Marquez*, 942 F.2d 617, 620–21 (9th Cir. 1991) (emphasis removed).

### 1. Did Dirtcheap Purposefully Avail Itself of the Privilege of Conducting Activities in Washington?

■ The "purposeful availment" element of the specific jurisdiction test may be met if "the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents.... It is not required that a defendant be physically present within, or have physical contact with, the forum, provided that his efforts are purposefully directed toward forum residents." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (internal citations omitted).

The State argues that Dirtcheap purposefully availed itself of the privilege of conducting business in Washington because Washington consumers may browse through Dirtcheap's selection of cigarettes and purchase cigarettes through its interactive website. (Response at 5). Additionally, the State provided evidence that Dirtcheap has sold cigarettes to Washington residents and that Dirtcheap advertises in Washington. *See* Casparian Decl. Exs. 2 (invoice indicating that Dirtcheap sold cigarettes to Ocean Shores, Washington resident) 3, 4 (Dirtcheap advertisements from *Little Nickel* ).

Dirtcheap argues that because its website is operated from Paducah, Kentucky, and because its "entire business operation occurs in Paducah, Kentucky," it cannot have purposefully availed itself of the privilege of conducting business in Washington. (Motion at 9).

Although maintenance of a "passive website" alone is insufficient to establish the purposeful availment element, it is well settled that a non-resident's maintenance of an interactive website through which consumers may purchase goods or services is sufficient to meet this element. *See, e.g., Stomp, Inc. v. NeatO, LLC,* 61 F.Supp.2d 1074, 1078 (C.D.Cal.1999) (noting that cases regarding personal jurisdiction stemming from internet activities create "outline of a rule where personal jurisdiction is not appropriate when a website is merely passive, either as an advertisement or for informational purposes, but is appropriate when an entity is conducting business over the Internet" and finding that defendant's on-line sales constituted purposeful availment); *Tech Heads, Inc. v. Desktop Serv. Ctr., Inc.,* 105 F.Supp.2d 1142, 1150–51 (D.Or.2000) (website operator had purposefully availed itself of the privilege of conducting activities in Oregon when it sought resumes on global basis through website, advertising, and toll-free telephone number, and had received resume from Oregon resident).

The Court finds that Dirtcheap's sale of cigarettes to Washington residents through its interactive website constitutes purposeful availment of the privilege of conducting business in Washington.[1]

## 2. Forum–Related Activities.

The second element of the specific jurisdiction test requires the plaintiff's claim to arise out of or result from the defendant's forum-related activities. *Roth,* 942 F.2d at 620–21. Dirtcheap argues that the State's claim of violation of the Jenkins Act does not arise from Dirtcheap's Washington-related activities. For example, Dirtcheap cites *Callaway Golf Corp. v. Royal Canadian Golf Assoc.,* 125 F.Supp.2d 1194 (C.D.Cal.2000). In *Callaway Golf,* the golf club manufacturer sued the golf association for defamation arising from a press release posted on the association's interactive website, through which residents of the forum state could purchase products. *Callaway Golf,* 125 F.Supp.2d at 1198. The court found that the "forum-related activities" element was not met because "plaintiff's claims d[id] not arise from that on-line commercial activity, as required for a federal court to exercise jurisdiction." *Id.* at 1204. Dirtcheap appears to argue that because the State's claim against it does not arise from resident consumers' complaints about Dirtcheap, the forum-related activities element is not met. *See* Motion at 14 ("The alleged contacts are simply too attenuated with the cause of action asserted by Plaintiff here.").

Dirtcheap applies the forum-related activities element far too strictly. As the *Callaway Golf* Court explained, "this re-

---

1. Citing *Gray & Co. v. Firstenberg Mach. Co.,* 913 F.2d 758 (9th Cir.1990), Dirtcheap argues that the absence of ongoing relationships between Dirtcheap and Washington consumers supports a finding that the Court lacks specific jurisdiction. *See* Motion at 9–10. The Court finds that Washington consumers' purchase of cigarettes through Dirtcheap's interactive website is sufficient to meet the purposeful availment element of the specific jurisdiction test. However, if a "con-

tinuing relationship" were required, Dirtcheap's maintenance of an incentive program by which it encourages customers to refer others to Dirtcheap indicates that Dirtcheap's statement that "[t]here is no evidence that any purported purchase by a Washington resident contemplates a continuing relationship between dirtcheapcig.com and that resident" is untrue. *See* Casparian Decl. Ex. 5 (description of incentive program on Dirtcheap website); Motion at 10.

quirement is met if, 'but for' a defendant's forum-related activities through which a defendant purposefully avails itself of the forum, the plaintiff would not have suffered injury." *Id.* (citing *Ballard,* 65 F.3d at 1500). The Jenkins Act requires a person who sells cigarettes to a consumer in interstate commerce to report the sale to the consumer's state's tobacco taxing authority. 15 U.S.C. § 376(a). But for Dirtcheap's alleged cigarette sales to Washington consumers, the State would not have suffered this injury. The forum-related activities element of the specific jurisdiction test is therefore met.

### 3. Reasonableness.

■ Courts consider seven factors when determining whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice, and is therefore reasonable: "(1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Rio Properties,* 284 F.3d at 1021.

As demonstrated by its interactive website, advertising in Washington periodicals, and sales to Washington residents, it is apparent that Dirtcheap has purposefully interjected itself in Washington State. The burden imposed upon Dirtcheap from defending in this forum will undoubtedly be heavier than it would bear in Missouri or Kentucky, but this burden is not unreasonable. Dirtcheap contends that "this suit could have tax implications for Kentucky, dirtcheapcig.com's state of residence, and as such could conflict with Kentucky's sovereignty." (Motion at 16). Although the Court recognizes that Ken-

tucky may lose revenue if the State prevails in this litigation because the State may require Dirtcheap's Washington patrons to pay a use tax on the cigarettes shipped from Kentucky, this is not the kind of conflict with the sovereignty of the defendant's state that would clash with traditional notions of fair play and substantial justice. To the contrary, addressing "[t]he large and increasing loss of revenue ... caused by the evasion of sales and use taxes on cigarettes shipped in interstate commerce to consumers" was one of the reasons the Jenkins Act was adopted. S.Rep. No. 84–1147 (1955), *reprinted in* 1955 U.S.C.C.A.N. 2883, 2883. Washington State has a high level of interest in adjudicating this dispute. This forum is convenient for the State. Finally, the efficiency and alternate forum elements are neutral.

In sum, these factors weigh heavily in favor of the reasonable exercise of personal jurisdiction over Dirtcheap.

### 4. Conclusion Regarding Personal Jurisdiction.

Because the State has met the three-element test for assertion of specific jurisdiction over a non-resident defendant, the Court finds that the exercise of such jurisdiction is appropriate here.

### D. Enforcement of the Jenkins Act.

■ Dirtcheap argues that because the Jenkins Act provides that criminal penalties may be imposed upon violators of the Act, the State has no authority to sue to enforce compliance with the Act's reporting requirements. (Motion at 17–19; Reply 1–6). Dirtcheap cites several opinions for the proposition that a private litigant may not enforce a criminal statute. *Id.* (citing *Bass Angler Sportsman Soc'y v. U.S. Steel Corp.,* 324 F.Supp. 412 (S.D.Ala. 1971); *Helvering v. Mitchell,* 303 U.S. 391,

58 S.Ct. 630, 82 L.Ed. 917 (1938); *Lipke v. Lederer*, 259 U.S. 557, 42 S.Ct. 549, 66 L.Ed. 1061 (1922)).

That criminal statutes may not be enforced by civil actions is well established. However, the Jenkins Act is not solely a criminal statute, as is evidenced by the provision that empowers United States district courts "to prevent and restrain violations" of the Act. 15 U.S.C. § 378. Congress recognized that prior to the amendment that added this injunctive component, "district courts only had the power to punish violations after they occurred" and that the amendment was designed to "greatly improve the enforcement of" the Act. S.Rep. No. 84–1147 (1955), *reprinted in* 1955 U.S.C.C.A.N. 2883, 2884. The Court must therefore determine whether a cause of action is implied in the statute that allows the State to sue for its enforcement.

■ Courts consider four factors in determining whether a private right of action should be implied from a federal statute:

(1) "[I]s the plaintiff one of the class for whose *especial* benefit the statute was enacted ... ?"

(2) "[I]s there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?"

(3) "[I]s it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?"

(4) "[I]s the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?"

*California v. Sierra Club*, 451 U.S. 287, 293, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981) (quoting *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)) (emphasis in original).

■ In ascertaining congressional intent regarding a statute, "the first consideration is the language of the Act." *Id.* at 294, 101 S.Ct. 1775. The Jenkins Act provides that a person who transfers cigarettes for profit in interstate commerce must report such sales to the tobacco tax administrators of the states in which the consumers reside and also provides that such a seller must file with the tobacco tax administrators a "statement setting forth his name and trade name (if any), and the address of his principal place of business and of any other place of business." 15 U.S.C. § 376(a). These provisions reveal congressional intent to "especially" benefit the states to whom the registration and reports are provided.

The Jenkins Act's legislative history provides further support for the proposition that the statute was enacted for the special benefit of the states. The Jenkins Act was adopted in recognition of "[t]he large and increasing loss of revenue to the States caused by the evasion of sales and use taxes on cigarettes shipped in interstate commerce to consumers." S.Rep. No. 84–1147 (1955), *reprinted in* 1955 U.S.C.C.A.N. 2883, 2883. Therefore, the first factor weighs heavily in favor of finding an implied right of action.

Although the evidence is not as strong as that which demonstrates congressional intent to specially benefit the states, there is some "indication of legislative intent ... to create such a remedy." *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). A 1953 amendment to the Act required reports to be "filed with" rather than "forwarded to" the tobacco tax administrator. "This [has] the effect of assuring, in the event of an offense committed under the act, that the venue of the action would be in the district in which the State Tobacco administrator has his office," rather than in the district in which

the cigarette seller is located. S.Rep. No. 83–685 (1953), *reprinted in* 1953 U.S.C.C.A.N. 2423, 2426. That Congress amended the Act to clarify that proper venue is in the district in which the tobacco administrator is located at least impliedly supports the proposition that Congress intended to create such a remedy. Had Congress not intended to create such a remedy, there would not have been as great a reason to amend the Act in a way that clarified that proper venue is in the tax administrator's district.

The third factor weighs strongly in favor of finding an implied cause of action because such a cause of action is "consistent with the underlying purpose [to assist states in preventing cigarette tax evasion] of the legislative scheme." *Cort*, 422 U.S. at 78, 95 S.Ct. 2080. Finally, although the cause of action cannot be said to be "one traditionally relegated to state law" because the statute arises from federal regulation of interstate commerce, the taxation of cigarettes is "in an area basically [of] the concern of the States." *Id.* Therefore, the final factor of the implied cause of action inquiry marginally weighs in favor of finding such an implied cause of action.

Having considered the *Cort* factors, the Court concludes that an implied right of action exists for the Jenkins Act.[2] The State may assert a Jenkins Act violation claim against Dirtcheap.

## III. CONCLUSION

For the foregoing reasons the Court DENIES Dirtcheap's motion to dismiss (Dkt.# 14). The Clerk of the Court is directed to send copies of this Order to all counsel of record.

---

**2.** This is the same conclusion reached by the court in *Angelica Co. v. Goodman*, 52 Misc.2d 844, 276 N.Y.S.2d 766, 769–70 (N.Y.Sup. 1966), which appears to be the only published opinion to have considered whether a plaintiff other than the United States may assert a claim for violation of the Jenkins Act.