IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| JACKSON MIKA, | ) | No. 69413-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREG STEVENS, an individual, | ) | |
| husband and wife, and their | ) | |
| community, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| JBC ENTERTAINMENT HOLDINGS, | ) | |
| INC., a corporation doing business | ) | |
| In the state of Washington; JBC OF | ) | |
| SEATTLE, WA, INC., a Washington | ) | |
| business, a subsidiary of JBC | ) | |
| Entertainment Holdings, Inc.; | ) | |
| GEMINI INVESTORS III, L.P., an entity, | ) | |
| owner of JBC ENTERTAINMENT | ) | |
| HOLDINGS INC.; ALPHA CAPITAL | ) | |
| PARTNER, LTD., an entity, owner of | ) | |
| JBC ENTERTAINMENT HOLDINGS, | ) | |
| INC.; GAMEWORKS ENTERTAINMENT | ) | |
| LLC, a corporation doing business in | ) | |
| the state of Washington; MARQUIS | ) | |
| HOLMES, an individual, dba BOSS LIFE | ) | |
| ENTERTAINMENT, JANE DOE, | ) | |
| husband and wife, and their community; | ) | |
| TONY HUMPHREYS, an individual, | ) | UNPUBLISHED OPINION |
| husband and wife, and their community, | ) | |
| | ) | |
| Defendants. | ) | FILED: December 23, 2013 |
| | ) | |

VERELLEN, J. — Jackson Mika filed a negligence action after suffering a gunshot wound at Jillian's Billiards Club. Mika named Greg Stevens individually, as one of the corporate officers of Jillian's parent company, JBC Entertainment Holdings, Inc. We granted Stevens's motion for discretionary review of the trial court's denial of Stevens's motion for summary judgment based on lack of personal jurisdiction. Because Mika has not set forth prima facie evidence of either an act or transaction by Stevens within Washington out of which his negligence claims arise, we reverse the trial court's conclusion that it could exercise personal jurisdiction over Stevens.

## FACTS

Jackson Mika suffered a gunshot wound on March 21, 2010 at Jillian's Billiards Club in Seattle. Along with other defendants not involved in this appeal, Mika sued JBC of Seattle, the entity that owned and operated Jillian's Billiards Club; JBC Entertainment Holdings, Inc. (JBC Holdings); Gemini Investors and Alpha Capital Partners, Ltd, two of the three owners of JBC Holdings; and Greg Stevens, the chief financial officer, chief executive officer, and third owner of JBC Holdings. Mika alleged that Stevens individually, along with the other corporate defendants, was negligent in failing to provide appropriate security policies at Jillian's.

a. Stevens's Motion for Summary Judgment Dismissal Based on Lack of Personal Jurisdiction

On May 29, 2012, Stevens moved for summary judgment based on lack of personal jurisdiction. In March 2010, the time of the accident at Jillian's, Stevens lived in Kentucky, but he has since moved to Nevada. His declaration submitted in support of his motion stated he never lived in Washington, never had an office or a mailing

address in Washington, and did not possess a bank account or any other personal or real property in the state. He has traveled to Washington approximately six times in the last decade.

Stevens's declaration also stated that JBC of Seattle, not JBC Holdings, was responsible for the control and operation of Jillian's. As the chief executive officer and chief financial officer of JBC Holdings, Stevens was responsible for the company's overall profitability, not the day-to-day operations of the subsidiary companies.[1] Stevens had no hiring and firing authority for employees at subsidiary companies, nor was he responsible for the policies and procedures in place at Jillian's. Nor was Stevens involved in organizing or approving events at Jillian's. Tyler Warfield, the chief operating officer of JBC Holdings, was responsible for day-to-day oversight of JBC's subsidiaries, including Jillian's.

Mika's opposition to Stevens's motion stated the court could exercise personal jurisdiction over Stevens because he had a personal role in setting security for the event at which Mika was injured. The court heard oral argument and denied Stevens's motion.[2] We granted Stevens's motion for discretionary review on February 22, 2013, determining the trial court had committed probable error under RAP 2.3(b)(2).

b. The Subsequent Sale of JBC of Seattle

Before Stevens filed his motion for summary judgment, Mika had deposed Stevens twice. At the second deposition, on December 20, 2011, Mika's counsel

---

[1] JBC Holdings owns various restaurants and other entertainment venues around the country.

[2] The court's order denying Stevens's motion for summary judgment also stated "the Defendant, Greg Stevens is subject to personal jurisdiction in this Court." Clerk's Papers at 506.

3

questioned Stevens about the sale of JBC of Seattle to Gameworks, which closed on October 14, 2011. Stevens testified that JBC Holdings was "Gemini's investment," but that the sale "would not have happened without my saying, yeah, I agree this is something that we should be doing."[3] Mika's counsel did not ask follow-up questions to determine whether Stevens was a co-owner of JBC Holdings.

On January 17, 2013, Mika deposed Gemini's CR 30(b)(6) witness, Matthew Keis. Keis testified that Gemini owned about 40 percent of JBC Holdings, that Stevens owned about 49 percent, and Alpha Capital the remaining 11 percent. Keis further testified that Stevens worked closely on the sale of JBC of Seattle and other properties of JBC Holdings to Gameworks, and was responsible for negotiation of many of the sale's terms. Stevens's name appears on the bill of sale of JBC of Seattle to Gameworks.[4] This transaction, evidence of which was not before this court when we granted discretionary review, is the sole basis for Mika's argument in his response brief that a Washington court may exercise personal jurisdiction over Stevens.

## DISCUSSION

Washington courts may exercise either general or specific personal jurisdiction over a nonresident defendant.[5] A state court's assertion of general or specific

---

[3] Clerk's Papers at 483.

[4] We granted discretionary review on February 22, 2013. The deposition in which Mika learned of Stevens's ownership interest took place on January 17, 2013, just over a month before the order granting review. Stevens argues that Mika's raising the issue of the sale and Stevens's ownership interest is, in essence, raising new evidence on appeal. Mika did not file anything after January 17, 2013 in superior court to request a continuance or leave to file an amended complaint, or to supplement the record in this court pursuant to RAP 9.11.

[5] CTVC of Hawaii Co., Ltd. v. Shinawatra, 82 Wn. App. 699, 708, 919 P.2d 1243 (1996).

jurisdiction over a foreign defendant is subject to review for compatibility with the Fourteenth Amendment's due process clause.[6] Under International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, a party has the burden of establishing certain minimum contacts between the defendant and Washington such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.[7]

The requirements of International Shoe must be met as to each defendant over whom a state court asserts jurisdiction.[8] Where an individual who is also an officer of a corporation subject to Washington jurisdiction challenges the existence of personal jurisdiction, courts must ensure that exercise of jurisdiction is based on sufficient minimum contacts of the individual, not the entity.[9]

Where a dispute about personal jurisdiction is before the trial court in a summary judgment motion, we apply traditional CR 56 de novo review.[10] We consider the facts and reasonable inferences to be drawn therefrom in the light most favorable to the

---

[6] Goodyear Dunlop Tires Operations, S.A. v. Brown, __ U.S. __, 131 S. Ct. 2846, 2850, 180 L. Ed. 2d 796 (2011).

[7] 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945); see also Freestone Capital Partners L.P. v. MKA Real Estate Opportunity Fund I, LLC, 155 Wn. App. 643, 654, 230 P.3d 625 (2010).

[8] Rush v. Savchuk, 444 U.S. 320, 332, 100 S. Ct. 571, 62 L. Ed. 2d 516 (1980); Huebner v. Sales Promotion, Inc., 38 Wn. App. 66, 70-71, 684 P.2d 752 (1984).

[9] See Huebner, 38 Wn. App. at 72-73.

[10] CTVC of Hawaii, 82 Wn. App. at 707-08.

nonmoving party.[11] The plaintiff has the burden of establishing that jurisdiction exists and need only establish a prima facie case.[12]

General jurisdiction exists if a nonresident defendant is transacting substantial and continuous business of such character as to give rise to a legal obligation, regardless of whether the cause of action is related to the defendant's contacts with Washington.[13] The plaintiff must show that a defendant's activities constitute doing business in the forum state.[14] Mika has failed to set forth any evidence whatsoever that Stevens engaged in substantial and continuous business in Washington. Stevens has traveled to Washington approximately six times and has no other contacts with the state. Because a Washington court may not exercise general personal jurisdiction over Stevens, Mika must put forth prima facie evidence of specific jurisdiction via the long-arm statute.

A Washington court may exercise specific personal jurisdiction over a nonresident defendant when the defendant's limited contacts give rise to the cause of action.[15] Washington's long-arm statute provides in part:

> (1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

---

[11] Id. at 708.

[12] Id.

[13] MBM Fisheries, Inc. v. Bollinger Mach. Shop & Shipyard, Inc., 60 Wn. App. 414, 418, 804 P.2d 627 (1991).

[14] Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417-18, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

[15] RCW 4.28.185; MBM Fisheries, 60 Wn. App. at 422-23.

(a) The transaction of any business within this state;

(b) The commission of a tortious act within this state;

. . . .

(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.[16]

To satisfy the requirements of due process, a Washington court may exercise specific personal jurisdiction over a foreign entity only when, in addition to the requisites of the long-arm statute, the following elements are satisfied:

"(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation."[17]

The quality and nature of a defendant's activities determine whether the contact is sufficient, not the "'number of acts or mechanical standards.'"[18] This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts."[19]

---

[16] RCW 4.28.185.

[17] CTVC of Hawaii, 82 Wn. App. at 709-10 (quoting Shute v. Carnival Cruise Lines, 113 Wn.2d 763, 767, 783 P.2d 78 (1989)); see also Bartusch v. Oregon State Bd. of Higher Educ., 131 Wn. App. 298, 306, 126 P.3d 840 (2006).

[18] Freestone Capital, 155 Wn. App. at 653 (quoting Perry v. Hamilton, 51 Wn. App. 936, 940, 756 P.2d 150 (1988)).

[19] Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

Stevens argues that Mika has failed to provide prima facie evidence supporting specific personal jurisdiction. In Mika's opposition to Stevens's motion for summary judgment, Mika argued Stevens committed tortious conduct by failing to provide reasonably safe premises for Jillian's patrons and failing to have a robust security policy.

However, the sole argument advanced in Mika's response brief is that the new evidence obtained after Stevens filed his motion for discretionary review, but a month prior to this court granting review, warrants a remand to the trial court to allow additional motion practice. Mika contends the new evidence, that Stevens was also a shareholder of JBC Holdings as well as the chief executive officer and chief financial officer, implicates Stevens in the allegedly fraudulent sale of JBC of Seattle to Gameworks while Mika's lawsuit was pending.[20] At oral argument, Mika focused upon Stevens's alleged responsibility for the security policy at Jillian's.

---

[20] Specifically, paragraph 33 in Mika's first amended complaint contends that Gemini and Gameworks participated in that sale and deprived JBC Holdings of an asset Mika might be able to pursue upon entry of a favorable judgment. Although the complaint contained allegations of fraudulent transfer against Gemini and Gameworks, Mika did not allege a fraudulent transfer cause of action against Stevens. We recognize that at the time Mika filed his complaint, he did not know of Stevens's role as 49 percent shareholder. However, even after Mika discovered this, he did not request leave to file an amended complaint and add the fraudulent transfer claim against Stevens.

We also note that the trial court has already determined the sale of JBC of Seattle to Gameworks was a bona fide business transaction. When Gemini moved for dismissal from the case on summary judgment, the trial court granted the motion because the sale was an arms-length transaction and Gemini had no liability as a result. Keis, Gemini's managing director, testified the sale of JBC Holdings' assets was necessitated by JBC Holdings' failure to generate sufficient cash flow to meet its financial obligations. The proceeds from the sale went to JBC Holdings' secured creditors and to windup of the corporation. The proceeds of the asset sale did not satisfy the outstanding debt, and the remaining balance was satisfied through collection of shareholder guarantees. Finally, none of the proceeds from the asset sale were

Whether we look to Stevens's alleged involvement in creation or implementation of Jillian's safety policies or to Stevens's involvement in the sale of JBC of Seattle to Gameworks, neither is sufficient under the long-arm statute to confer personal jurisdiction over Stevens.

a. Commission of Tortious Conduct Within Washington

Mika argued Stevens committed tortious conduct by failing to provide reasonably safe premises for Jillian's patrons and failing to have a robust security policy, thereby satisfying RCW 4.28.185(1)(b). A tortious act occurs in Washington when the injury occurs within the state.[21] An injury "occurs" in Washington for purposes of the long-arm statute "if the last event necessary to make the defendant liable for the alleged tort occurred in Washington."[22] "Jurisdiction may be asserted where a defendant's out-of-state conduct causes harm in the forum state."[23]

There is no indication in the record that Stevens was involved with any of the allegedly tortious conduct. Stevens, as chief executive officer and chief financial officer, was responsible for the overall profitability of JBC Holdings, not day-to-day operations, including policies and procedures. While he had knowledge of some of the safety and security policies, there is no evidence in the record that Stevens was personally responsible for creating or implementing the policies.[24] Stevens testified that "[i]n a

---

distributed to the owners of JBC Holdings. The trial court declined Stevens's late attempt to join in the motions of Gemini and Gameworks.

[21] Grange Ins. Ass'n v. State, 110 Wn.2d 752, 757, 757 P.2d 933 (1988).

[22] MBM Fisheries, 60 Wn. App. at 425.

[23] Huebner, 38 Wn. App. at 72.

[24] Rather, chief operations officer Tyler Warfield was responsible for safety and security policies. Indeed, Mika's own safety expert focused on the actions of Warfield,

broad context, the quote, 'policy and procedures,' it's my expectation that Tyler [Warfield] is managing those, and overseeing, and making sure that we're adhering to those."[25]

At oral argument, Mika emphasized that Stevens had testified in his deposition that security at Jillian's was not necessary, suggesting Stevens admitted having a role in setting the security policy and thus constituting a basis for long-arm jurisdiction based on tortious conduct. Even if we were to consider this argument, which is not argued in Mika's response brief, the record on appeal does not include the portion of the deposition in which Stevens initially made such a statement, so we are unable to examine the context of such a statement. The record before us reflects only that Stevens testified he did not believe video surveillance was necessary. Stevens's counsel asked Stevens at the end of the deposition to clarify whether he thought other security measures were necessary, and Stevens responded that the overall safety of the patrons at Jillian's was important. Given Stevens's unrebutted testimony that he had no responsibility for creating or implementing any of the safety policies or procedures, Stevens's comments on the security policies do not create a genuine issue of material fact that he committed tortious conduct, thus subjecting himself to personal jurisdiction under the long-arm statute.

---

of JBC Entertainment in general, and of Michael Knudsen, the manager on duty at Jillian's at the time of the shooting.

[25] Clerk's Papers at 131. This testimony is consistent with Warfield's, who testified that as president and chief operations officer, he "[o]versee[s] essentially, all operations, and that would encompass operations and marketing, purchasing, everything that kind of helps the clubs run." Clerk's Papers at 140. With regard to the safety policies at JBC Seattle, Warfield testified he was familiar with them.

b. Transaction of Business Within Washington

Mika also alleges that Stevens's participation in the sale of JBC of Seattle to Gameworks satisfies RCW 4.28.185(1)(a). While Stevens participated in the sale of an asset located in Washington, RCW 4.28.185(1) and (3) require the plaintiff's claim to arise from the act that subjects a defendant to litigation in the state.

Mika's tort claims would necessarily arise from Stevens's alleged failure to provide adequate security at Jillian's and not from the subsequent sale of JBC of Seattle. The only causes of action alleged against Stevens individually are negligent hiring, negligent supervision, ordinary negligence, and negligent infliction of emotional distress.[26] All of these claims arise out of the theory that in his capacity as chief executive officer and chief financial officer of JBC Holdings, Stevens failed to provide adequate security at Jillian's. The new evidence about Stevens's status as an owner of JBC Holdings does not change Mika's theories of tort liability against Stevens, which relate only to Stevens's role as chief executive officer and chief financial officer. Mika's tort claims do not arise out of Stevens's involvement in the sale of JBC of Seattle.

c. Due Process

The assertion of long-arm jurisdiction against Stevens would also offend due process standards. As with the long-arm statute, due process considerations require the defendant's contacts to actually give rise to the cause of action.[27] If a plaintiff cannot show a purposeful act or consummation of some transaction in the forum state,

---

[26] As discussed above in footnote 20, Mika did not allege a claim of fraudulent transfer against Stevens.

[27] CTVC of Hawaii, 82 Wn. App. at 709.

as well as a connection between the act or transaction and the cause of action, due process prevents the exercise of personal jurisdiction over the defendant.[28]

Mika again relies on one act, the sale of JBC of Seattle to Gameworks, to support his argument that Stevens purposefully did some act or consummated some transaction within the forum state. While Mika recognizes that execution of a contract with a Washington resident alone is not sufficient to fulfill the purposeful act requirement,[29] Mika does not point to any evidence in the record to suggest that the sale was anything more than execution of a bona fide contract between Gameworks, a foreign corporation, and JBC Holdings, a foreign corporation, for the sale of JBC of Seattle, a Washington business entity with assets in Washington.[30]

A court must examine the nature of the contractual relationship, including prior negotiations and contemplated future consequences, along with the actual course of dealing and specific terms of the contract, to determine whether that contract can be the basis for exercise of personal jurisdiction.[31] While the evidence establishes that Stevens took the lead in negotiating and executing the sale of JBC of Seattle, there is

---

[28] If the plaintiff does satisfy both elements of the due process test, the burden shifts to the defendant to present a compelling argument as to why the exercise of jurisdiction would be unreasonable. Burger King Corp., 471 U.S. at 476-77.

[29] Precision Laboratory Plastics, Inc. v. Micro Test, Inc., 96 Wn. App. 721, 727, 981 P.2d 454 (1999).

[30] Mika also contends that subjecting Stevens to the jurisdiction of a Washington court would not offend traditional notions of fair play because Stevens gave misleading testimony about his ownership interest in JBC Holdings. While Stevens's deposition testimony that JBC Holdings was Gemini's investment was arguably incomplete, he also testified that others needed his approval for a sale. This testimony does not amount to fraud, either upon Mika or upon the court.

[31] Precision Laboratory, 96 Wn. App. at 726-27 (discussing the "purposeful transaction" element of the due process analysis where a contract is at issue).

no indication that his individual activity took place in Washington or created any ongoing relationships and obligations to Washington citizens.[32]

Mika argues that "[i]t is axiomatic that the asset Stevens conveyed 'post-tort' to Gameworks is the situs of the negligence and consequent injury to the Plaintiff."[33] But Mika provides no persuasive argument or evidence to establish that his negligence claims arise from, or bear relationship to, the sale of JBC of Seattle to Gameworks.

Mika does not set forth prima facie evidence of an act or transaction by Stevens within Washington state out of which Mika's tort claims arise. Mika does not make any showing that Stevens was responsible for the safety policy at Jillian's, nor that his involvement in the post-tort sale had any relationship to Mika's tort claims. There is no genuine issue of material fact.

We reverse the trial court order denying Stevens's motion for summary judgment based on lack of personal jurisdiction, and remand with direction to dismiss Stevens from the lawsuit.

Stevens requests attorney fees under RCW 4.28.185(5). An award of attorney fees under the long-arm statute is discretionary.[34] "Where the defendant obtains a ruling that personal jurisdiction under the long-arm statute does not lie, the court may award up

---

[32] See Huebner, 38 Wn. App. at 70-73 (personal jurisdiction existed over employees of corporation where those employees had personally negotiated rental agreements with Washington residents and had personally engaged in the offer and sale of unregistered franchises within Washington); Precision Laboratory, 96 Wn. App. at 726-27 (personal jurisdiction based on a contract satisfied due process where contract contemplated future consequences between Washington corporation and foreign corporation and created ongoing obligations between the two entities).

[33] Respondent's Br. at 11.

[34] RCW 4.28.185(5); Payne v. Saberhagen Holdings, Inc., 147 Wn. App. 17, 36, 190 P.3d 102 (2008).

to the amount of attorney fees that defendant would have incurred had the jurisdictional defense been presented as soon as the grounds for it became available."[35] We remand to the trial court to determine appropriate attorney fees under RCW 4.28.185(5) both in the trial court and on appeal.[36]

WE CONCUR:

_____

_____

_____

---

[35] Hewitt v. Hewitt, 78 Wn. App. at 447, 456-57, 896 P.2d 1312 (1995).

[36] Scott Fetzer Co. v. Weeks, 122 Wn.2d 141, 149, 859 P.2d 1210 (1993) (remanding to the trial court to determine an appropriate award of fees and to determine "'what, if any, award [defendant] is entitled to for its appellate efforts'" (quoting Scott Fetzer Co. v. Weeks, 114 Wn.2d 109, 124-25, 786 P.2d 265 (1990))).