IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| MARK HOFFMAN, | ) | No. 81887-2-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL LOGAN, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |
| CAPITAL ADVANCE SOLUTIONS, | ) | |
| LLC, CHARLES BETTA, GEOFFREY | ) | UNPUBLISHED OPINION |
| HORN, and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

VERELLEN, J. — Mark Hoffman obtained a default judgment against Capital
Advance Solutions, LLC (Capital) and its officers, Charles Betta, Geoffrey Horn,
and Daniel Logan. The officers moved to vacate the judgment but the superior
court denied their request. Logan appeals, claiming the judgment is void as to him
for lack of personal jurisdiction and invalid service of process.[1]

Because Logan failed to establish the absence of personal jurisdiction and
defective service of process with clear and convincing evidence, the superior court
did not err in denying the motion under CR 60(b)(5). Therefore, we affirm.

---

[1] Capital, Betta, and Horn are not parties to this appeal.

FACTS

In May 2018, Mark Hoffman commenced this civil action in King County Superior Court against Daniel Logan. A process server handed Logan's wife the summons and complaint at Logan's apartment located at 550 Cumberland Street in Westfield, New Jersey. She handed them back to the process server and closed the door. Neither Logan nor his wife would answer the door. The process server "place[d] the summons and complaint under the door" and "repeatedly yelled, 'I am leaving the papers outside your door. You are being served."[2] The process server also prepared an affidavit of service but did not swear to it before a notary or court clerk as required under CR 4(g)(6).[3]

Hoffman's complaint alleged that "the Funding Center," at Logan's direction as Capital's chief financial officer, made eight automated calls to his residential cellular phone soliciting business loans in violation of the Telephone Consumer Protection Act of 1991 (TCPA)[4] and the Washington Telephone Solicitation Act (WTSA).[5] He also alleged his phone number had been on the "National Do Not Call Registry" since 2007, and that:

> Upon information and belief, Defendants Betta, Horn, and Logan had direct, personal participation in causing the illegal telemarketing calls alleged in this complaint to be made, and they directly authorized these illegal telemarketing calls to be made. They failed to take efforts to implement appropriate policies or procedures designed to comply with the federal laws and regulations that are the basis for

---

[2] Clerk's Papers (CP) at 19.

[3] "In case of personal service out of the state," under CR 4(g)(6), proof of service shall be "the affidavit of the person making the service, sworn to before a notary public, with a seal attached, or before a clerk of a court of record."

[4] 47 U.S.C. § 227.

[5] RCW 80.36.390.

this cause of action. They authorized and ratified the illegal telephone calls. They refused to alter their company's business practices and continued to place illegal prerecorded and automated telephone calls to telephone consumers in violation of federal laws after being sued at least 12 times in federal court since 2012 for engaging in illegal telemarketing practices. Defendant Betta's, Horn's, and Logan's contacts with Washington state were and are sufficient that they could reasonably anticipate being ha[i]led into court here.[6]

In August 2018, more than 60 days after Logan failed to respond to the summons or answer the complaint, Hoffman moved for an order of default. In support of this motion, he filed declarations attesting to his efforts to serve Logan and how service could not be made in Washington. He also filed the process server's affidavit. The superior court granted Hoffman's motion, entered a default judgment awarding him $25,042.47, and enjoined Logan from continuing to make unsolicited telemarketing calls in Washington.

In August 2019, Hoffman assigned the judgment to James Shelton, who resided in Pennsylvania.

In July 2020, Logan filed a motion in the superior court to vacate the default under CR 60(b)(5), alleging the judgment was void for lack of personal jurisdiction, defective service, and meritorious defenses. Logan supported this motion with a declaration stating he (1) was "a resident of New Jersey," (2) was "not affiliated with any business" in Washington, (3) never owned property in Washington, (4) had no relationship with Hoffman, (5) neither called nor directed Hoffman to be

---

[6] CP at 3.

called, and (6) "was not served personally and did not accept delivery of the summons and complaint."[7]

Shelton opposed Logan's motion, arguing the affidavit of service "documents in detail exactly what occurred during the service of process on May 20, 2018," specifically "that the process server handed the papers to Daniel Logan's wife and told her to give them to her husband, but she handed them back to him, so he put them in a door jamb of their residence."[8]  Shelton asserted "the process server took photos of him walking towards Mrs. Logan to hand her the papers, and later leaving them in the door jamb" and filed copies of the photographs.[9]

After a hearing and supplemental briefing regarding individual liability of Capital's officers, the superior court denied Logan's motion finding that Hoffman "met the requirements for service of process and that no equitable basis for vacating the default and default judgment exists under applicable law."[10]

Logan, appearing pro se, appeals the denial of his CR 60(b) motion.[11]

---

[7] CP at 211-12.

[8] CP at 283

[9] CP at 283.

[10] CP at 260.

[11] Pro se litigants are held to the same standards as attorneys and must comply with all procedural rules on appeal.  In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993).  While Logan attempts to argue on behalf of Betta and Horn in his briefing to this court, we ignore those arguments because Logan cannot represent anyone other than himself as a pro se litigant.

ANALYSIS

A superior court may, upon a CR 60(b)(5) motion, relieve a party from a final judgment if that judgment is void. A judgment entered without personal jurisdiction of a party is void and a superior court does not have personal jurisdiction over a party lacking minimum contacts in Washington or if service of process was improper.[12] "Because courts have a mandatory, nondiscretionary duty to vacate void judgments, a trial court's decision to grant or deny a CR 60(b) motion to vacate a default judgment for want of jurisdiction is reviewed de novo."[13]

An appeal from the denial of a CR 60(b) motion is not a substitute for an appeal from the final judgment, so our review is narrowed to the propriety of the denial not the impropriety of the default judgment.[14] Once a default judgment is entered, the party challenging the judgment has the burden to show by clear and convincing evidence that the judgment is void.[15] Clear and convincing evidence exists "when the evidence shows the ultimate fact at issue to be highly probable."[16]

---

[12] In re Marriage of Markowski, 50 Wn. App. 633, 635-36, 749 P.2d 754 (1988); Powell v. Sphere Drake Ins. P.L.C., 97 Wn. App. 890, 899, 988 P.2d 12 (1999); RCW 4.28.185.

[13] Dobbins v. Mendoza, 88 Wn. App. 862, 871, 947 P.2d 1229 (1997).

[14] Bjurstrom v. Campbell, 27 Wn. App. 449, 450-51, 618 P.2d 533 (1980).

[15] Woodruff v. Spence, 88 Wn. App. 565, 571, 945 P.2d 745 (1997) ("after judgment is entered, the burden is on the person attacking the service to show by clear and convincing evidence that the service was irregular"); see also Moss v. Indus. Leasing Corp., 2005 WL 3050277 at *2-3 (E.D. Wash. 2005) (unpublished) (federal district court applying Washington's long-arm statute, concluding that the defaulted party "bears the burden of refuting Plaintiffs' allegations of minimum contacts with the [s]tate of Washington by 'compelling evidence'").

[16] In re Dependency of K.S.C., 137 Wn.2d 918, 925, 976 P.2d 113 (1999).

*I. Specific Personal Jurisdiction*

Logan argues the default judgment against him was void for lack of specific personal jurisdiction under Washington's long-arm statute because he did not have sufficient minimum contacts with this state.[17] We disagree.

For purposes of determining jurisdiction under the long-arm statute, the plaintiff bears the initial burden of making a prima facie showing of the jurisdictional facts.[18] Therefore, "the allegations in the plaintiff's complaint must be taken as correct."[19] Once that burden is met and default has been entered, the burden shifts to the defendant who challenges jurisdiction in a motion to vacate to refute the factual allegations with clear and convincing evidence. Thus, we examine the record to see if Hoffman's complaint alleges facts sufficient to invoke Washington's long-arm jurisdiction, then look to see if Logan presented convincing evidence to refute them.

"Washington's long-arm statute, RCW 4.28.185, authorizes the court to exercise jurisdiction over a nonresident defendant to the extent permitted by the due process clause of the United States Constitution."[20] Our courts "may exercise

---

[17] Logan also claims the superior court lacked general jurisdiction over him under RCW 4.28.080(10), but we need not address this claim as general jurisdiction was not the basis upon which Hoffman asserted Washington's jurisdiction in this action.

[18] SeaHAVN, Ltd. v. Glitnir Bank, 154 Wn. App. 550, 563, 226 P.3d 141 (2010) (citing CTVC of Hawaii Co., Ltd. v. Shinawatra, 82 Wn. App. 699, 707, 919 P.2d 1243 (1996)).

[19] Walker v. Bonney-Watson Co., 64 Wn. App. 27, 33, 823 P.2d 518 (1992) (citing MBM Fisheries, Inc. v. Bollinger Machine Shop and Shipyard, Inc., 60 Wn. App. 414, 418, 804 P.2d 627 (1991)).

[20] SeaHAVN, 154 Wn. App. at 563 (citing MBM Fisheries, 60 Wn. App. at 423.)

specific jurisdiction over a nonresident defendant when the defendant's limited contacts give rise to the cause of action."[21] Here, Hoffman alleged Washington had specific jurisdiction over Logan, as authorized by RCW 4.28.185, because Logan transacted business and committed tortious acts in Washington. The long-arm statute provides in pertinent part:

> (1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any said acts:
>
> (a) The transaction of any business within this state;
>
> (b) The commission of a tortious act within this state;
>
> . . . .
>
> (3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him or her is based upon this section.[22]

Washington courts apply the following three-prong test in determining whether to exercise personal jurisdiction over a nonresident defendant under RCW 4.28.185:

> (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;
>
> (2) the cause of action must arise from, or be connected with, such act or transaction; and
>
> (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the

---

[21] CTVC of Hawaii, 82 Wn. App. at 709 (citing MBM Fisheries, 60 Wn. App. at 422-23).

[22] RCW 4.28.185(1), (3).

activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.[23]

*A. Purposeful Acts*

"A plaintiff can establish purposeful availment by showing the initiation of a transaction outside the state 'in contemplation that some phase of it will take place in the forum state.'"[24]  Hoffman claimed Logan, as Capital's chief financial officer, authorized "the Funding Center" to make "the illegal telemarketing calls" to his Washington-based cellular phone number to solicit business loans.[25]  Drawing inferences in Hoffman's favor, as we must, Logan's knowledge that Washington phone numbers were being called suffices to satisfy the first prong of the jurisdictional test.

With his motion to vacate, Logan attached a declaration stating that he did not call Hoffman, did not direct that Hoffman be called, and was not aware of any call being made to Hoffman.  But he said nothing about his relationship with, or his ability to control, the Funding Center's activities.  Moreover, Logan did not provide any evidence to refute Hoffman's allegation that the Funding Center called Washington-based telephone numbers at his direction.  "When a party fails to produce relevant evidence within its control, without satisfactory explanation, the

---

[23] Shute v. Carnival Cruise Lines, 113 Wn.2d 763, 767, 783 P.2d 78 (1989) (quoting Deutsch v. West Coast Mach. Co., 80 Wn.2d 707, 711, 497 P.2d 1311 (1972)).

[24] SeaHAVN, 154 Wn. App. at 565 (quoting CTVC of Hawaii, 82 Wn. App. at 711).

[25] CP at 3, 8-9.

inference is that such evidence would be unfavorable to the nonproducing party."[26] Thus, we draw a reasonable adverse inference from Logan's failure to produce such evidence, and conclude that evidence exists showing Logan did have the authority to control the Funding Center's activities including telephone soliciting Washington residents for purposes of transacting business in this state.

Hoffman also alleged Logan purposely acted in Washington by committing tortious acts in this state, claiming Logan was personally liable under the TCPA. A tort "occurs in Washington when the injury occurs within our state"[27] and "[a]n injury 'occurs' in Washington for purposes of the long-arm statute, 'if the last event necessary to make the defendant liable for the alleged tort occurred in Washington.'"[28]

To maintain a claim under the TCPA, the plaintiff must establish three elements: "(1) the defendant called a cellular telephone number; (2) using an automated telephone dialing system; [and] (3) without the recipient's prior express consent."[29] Here, the complaint alleged that Logan "authorized and ratified the illegal telephone calls," Logan "refused to alter [Capital's] business practices and continued to place illegal prerecorded and automated telephone calls to telephone consumers in violation of federal laws," and Hoffman "never provided prior express

---

[26] Lynott v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 123 Wn.2d 678, 689, 871 P.2d 146 (1994) (citing Pier 67, Inc. v. King County, 89 Wn.2d 379, 385-86, 573 P.2d 2 (1977)).

[27] SeaHAVN, 154 Wn. App. at 569 (citing Grange Ins. Ass'n v. State, 110 Wn.2d 752, 757, 757 P.2d 933 (1988)).

[28] Id. (quoting MBM Fisheries, 60 Wn. App. at 425).

[29] Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)).

written consent or any other kind of consent to receive telemarketing calls made by or on behalf of Defendants."[30]

The "last event necessary" allegedly occurred when the Funding Center, at Logan's direction, made automated calls to Hoffman's cellular phone in Washington.[31] Logan did not present any evidence to refute the alleged TCPA violation occurred in Washington.

Instead, Logan argued the complaint did not allege sufficient facts to impose personal liability onto him.[32] But Logan's argument ignores that "[i]ndividuals who directly . . . violate the TCPA should not escape liability solely because they are corporate officers" and a corporate officer is deemed to have "made" a call, and thus liable under the TCPA, if the officer "had direct, personal participation in or personally authorized the conduct found to have violated the statute."[33] His argument also ignores that Washington courts extend personal liability to corporate officers who supervised, directed, or approved wrongful business conduct.[34]

---

[30] CP at 3, 8.

[31] For this reason, we conclude the fact that Hoffman made a return call to the Funding Center, who then transferred him to "the sales manager at Capital" is of no consequence in determining jurisdiction over Logan. CP at 9.

[32] Though the parties filed supplemental briefing at the superior court's request following the hearing on Logan's motion to vacate, we note Logan did not designate his supplemental brief as part of the record on appeal. Therefore, we do not have the benefit of reviewing any additional arguments he may have asserted below on this issue.

[33] Texas v. Am. Blastfax, Inc., 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001).

[34] Grayson v. Nordic Constr. Co., 92 Wn.2d 548, 554, 599 P.2d 1271 (1979) ("if a corporate officer participates in wrongful conduct or with knowledge approves

Again, viewing the allegations in Hoffman's favor, we conclude that the complaint raised a prima facie claim for relief under the TCPA and established the first prong of the jurisdictional test. And Logan did not establish facts to the contrary in his motion to vacate.

### B. Forum-Related Conduct

Under the second prong of the jurisdictional test, "[j]urisdiction is proper if the events giving rise to the claim would not have occurred 'but for' the solicitation of business in the forum state."[35] It is undisputed that this cause of action arose out of the alleged calls Hoffman received from the Funding Center at the direction of Logan. But for those calls, Hoffman would not have suffered any injuries the TCPA and WSTA were enacted to prevent. Hoffman's allegations satisfied the second prong of the test, and Logan offered no evidence to refute them.

### C. Fair Play and Substantial Justice

The final prong in determining whether long-arm jurisdiction is appropriate requires consideration of the quality, nature, and extent of Logan's activities in Washington, the relative convenience of maintaining the action here, the benefits Washington law affords, and the basic equities.[36]

Hoffman specifically alleged "Logan's contacts with Washington state were and are sufficient that [he] could reasonably anticipate being ha[i]led into court

---

of the conduct, then the officer as well as the corporation, is liable for the penalties").

[35] SeaHAVN, 154 Wn. App. at 571 (quoting CTVC of Hawaii, 82 Wn. App. at 719).

[36] Shute, 113 Wn.2d at 767 (quoting RCW 4.28.185).

here."[37]  But in the declaration used to support his motion to vacate, Logan did not assert any facts or present any evidence to counter Hoffman's allegation.  In other words, Logan failed to articulate how or why defending himself against this action in Washington offends traditional notions of fair play and substantial justice.

Accordingly, we conclude Logan had sufficient minimum contacts with Washington for the superior court to obtain specific personal jurisdiction.  The superior court did not err in denying Logan's motion to vacate the default judgment on this ground.

*II.  Service of Process*

Logan contends he was not properly served with the summons and complaint, so the default judgment against him is void for lack of personal jurisdiction.  But because he failed to establish defective service of process, we disagree.

In order to obtain jurisdiction over nonresident defendants, the long-arm statute requires personal service on them.[38]  Personal service of the summons shall be served by delivering a copy thereof to the defendant personally, or by leaving a copy of the summons at the house of his or her usual abode with some person of suitable age and discretion then resident therein.[39]

---

[37] CP at 3.

[38] RCW 4.28.185(2) reads: "Service of process upon any person who is subject to the jurisdiction of the courts of this state, as provided in this section, may be made by personally serving the defendant outside this state, as provided in RCW 4.28.180, with the same force and effect as though personally served within this state."

[39] RCW 4.28.080(16).

Here, the process server prepared an affidavit setting forth the manner in which he served Logan on May 20, 2018. The affidavit states in pertinent part:

> When I arrived, a woman on the porch said she was Dan [Logan's] wife. I told her that I had some papers to deliver to Dan. She seemed very suspicious of me. I then asked if Dan was home. She started to say yes and looked towards the house, but stopped mid-sentence and said he wasn't there. I suspected she was lying and that Dan was really home. I asked what her name was, however I already knew her name is Deidre. She would not give it to me. I followed her to the door and handed her the papers, and told her that she needed to give the summons and complaint to her husband Dan who has been named as a defendant in a lawsuit. She gave the papers back to me. I told her that she either needed to get Dan to come and accept the papers, or she would need to accept the papers on her husband's behalf. She refused, went back inside, and locked the door. I knocked on the door for several minutes and no one answered.
>
> I called the police department to give them a heads-up that I was trying to serve legal paperwork. Officer Vagan . . . of the Westfield Police Department arrived. The officer knocked on the door and yelled "police department" but no one answered. It was obvious that the defendants were [sic] avoiding service. The door to the defendant's apartment unit is inside the physical house. After knocking on the door for approximately 15 minutes, I decided to place the summons and complaint under the door to . . . Daniel Logan's unit. I repeatedly yelled "I am leaving the papers outside your door. You are being served."[40]

Below, in the motion to vacate proceeding, Logan's declaration said the following on the issue of service: "I was not served personally and did not accept delivery of the summons and complaint."[41] But Logan's statement is general and conclusory. It is not convincing evidence of defective service. In his briefing to this court, however, Logan claims:

_____

[40] CP at 19.

[41] CP at 216.

13

> [He] was not served personally because at the time, as now, he was not on speaking terms with his ex-wife. He and his wife were separated at the time, the divorce becoming final in July 2018. She did not accept service and legally was not obligated to, since she did not reside with Logan at the time. She almost certainly made this clear to the process server. Regardless, the process server, according to his own records, did not serve her.[42]

We are unpersuaded by Logan's claim because it appears nowhere in the record and there is no indication that he raised this claim for the superior court to consider.[43] Moreover, we conclude the affidavit of service establishes that Logan actually received service of process.

Under RCW 4.28.080, a process server accomplishes personal service if there is a clear attempt to yield possession and control of the documents to the person being served. In United Pacific Insurance Co. v. Discount Co., the court held that defendant was served properly after the process server attempted to hand the documents to the defendant, but she evaded accepting them by slamming the door.[44] This case is similar to United Pacific in that the process server here attempted to yield possession and control of the documents personally to Logan's wife, but she affirmatively refused. Therefore, service of process was sufficient under RCW 4.28.080(16).

Logan also argues the affidavit of service in this case was not notarized as required by CR 4(g)(6), therefore it was deficient, rendered service improper, and invalidated personal jurisdiction. While he is correct that the affidavit does not

---

[42] Appellant's Br. at 35.

[43] We decline to consider Logan's factual assertions that are not supported by citations to the record. See RAP 10.3(a)(5).

[44] 15 Wn. App. 559, 561-62, 550 P.2d 699 (1976).

comport with the civil rules, this fact alone does not affect the validity of service of process upon him.[45]  This is so because "[i]t is the fact of service that confers jurisdiction, not the return, and the latter may be amended to speak the truth."[46]  And as we have already determined, Logan was properly served with the summons and complaint in this action.

The superior court properly denied the motion to vacate on the grounds of insufficient service of process.

We affirm.

_____

WE CONCUR:

_____     _____

---

[45] CR 4(g)(7) reads: "In case of service otherwise than by publication, the return, acceptance, admission, or affidavit must state the time, place, and manner of service.  Failure to make proof of service does not affect the validity of the service."

[46] Williams v. Steamship Mut. Underwriting Ass'n, 45 Wn.2d 209, 227, 273 P.2d 803 (1954).